# RICHARD TUMILTY vs. THE BANK OF MO., Garnishee of Wm. Smith.

Plaintiff, who was a bona fide holder, for value, of a negotiable note, instituted suit against defendant, who was the first endorser. The defence was that defendant endorsed the note when blank, with the understanding that it was afterwards to be filled by the maker with a certain amount, and that the maker filled the note with a much larger amount than that agreed upon.

Held, that such conduct on the part of the maker, amounted only to a breach of confidence, and is no defence to the action.

## APPEAL FROM ST. LOUIS COURT OF COMMON PLEAS.

### STATEMENT OF THE CASE.

This was an action of assumpsit upon a promissory note brought by the appellee as holder against the appellant as first endorser of a note purporting to have been made by George Breen in favor of Richard Tumilty as payee, and to have been endorsed by him to Bernard Dillon, and by Dillon to the bank.

The defendant below filed the statute plea, and also on the 17th March, 1848, an affidavit stating the transaction, and denying the execution of the instrument.

When the case was called for trial, the defendant presented an affidavit for a continuance on account of the absence of two witnesses, Dillon, the second endorser of the note sued on, and Hudson, an endorser on another note, supposed by defendant to have been made at the same time and in the same manner, and to have been a part of the same transaction. Upon reading the affidavit, which stated what was expected to be proved by them, the court suggested that the plaintiff might safely admit all the facts stated, whereupon it was agreed by the counsel that the written examination of these witnesses, taken down before law com'r. Watson, in a charge of forgery against Breen, should be read in evidence as their testimony, with the same effect as if the witnesses were produced in court; and the trial proceeded.

The plaintiff proved the signatures by Breen, and read the note, protest, &c., in evidence, the defendant excepting, and closed his case.

The defendant proposed to prove, and offered evidence tending to prove the facts stated in the affidavit, filed with the plea, to the effect,

1st. That Breen, under pretence of getting Tumilty to endorse a note for him in blank for $150, to go in bank, had procured him to put his name on the back of two printed blank notes, by telling him that the first one was not written well enough to go in bank, and then clandestinely carrying away both blanks, which he afterwards, without the authority, knowledge or consent of Tumilty, filled up one for $540, and the other for $620, and got discounted in bank; and that Tumilty had delivered him one blank instrument, with the express agreement that it was to be filled up for $150 and no more; and that Breen had privately taken away the other without any authority being given by Tumilty with regard to it; and

2nd. That one of these notes, the one sued on in this case, was taken by Breen to Dillon while yet blank, with Tumilty's name on it; that Breen told Dillon it was to be filled up for $300, and go in bank for that sum: that Dillon endorsed it with the express agreement and understanding between them, that it should be filled up for $300 and no more; and that it was filled up and negotiated by Breen for $540, (with intent to defraud, of course.)

But the court being of opinion that neither state of facts, if proven, amounted to a good defence, ruled out and excluded the greater part of the evidence offered, some of it on other

grounds of incompetency, but chiefly upon the grounds above stated, to which exceptions were saved, and then for the purpose of more distinctly embodying the facts and the questions, the defendant asked the following instructions, which were refused, viz:

1st. "If the jury believe from the evidence, that when Bernard Dillon wrote his name upon the note sued on, he was told by Breen, and it was understood between them, that it was to be filled up for three hundred, or three hundred and fifty dollars, and no more, and that Breen afterwards filled up said endorsement for a note for five hundred and forty dollars, and negotiated it to the plaintiff, and that the note sued upon in this case is the same one, they will find for the defendant.

2nd. "If the jury believe from the evidence that the note sued on is one of two blank notes, on which George Breen procured the defendant to write his name as endorser, under an agreement and understanding between them that he should endorse one note only for $150, and that he got his name on two blanks by telling him that his name was not written well enough on the first to go in bank, and then clandestinely carried away both blanks, without the consent of the defendant, and afterwards filled up and negotiated both blanks, one for $540, the note sued on, and the other for $620, when only one note was intended or authorized by defendant, they will find for the defendant." Exceptions were taken. The court then, of its own motion, gave the following instructions, to which an exception was taken, viz:

"If the jury believe from the testimony that the defendant endorsed the note in question before the same was filled up, and entrusted it to the maker, George Breen, for the purpose of being filled up and discounted at the bank, it is no defence to this action, that the said note was filled up for a different or greater amount than was intended or understood by the defendant."

Whereupon the jury were allowed to find a verdict for the plaintiff; a motion for a new trial was filed and overruled; a bill of exceptions filed and an appeal taken to this court.

HOLMES for plaintiff.

1. Forgery renders the instrument utterly void *ab initio ;* no right can be given and no obligations created by it; and it is a valid defence against a bona fide holder for value without notice.

Boyd vs. Brotherton, 10 Wend. 93; Chit. Bills, 286-7 and note (1;) Sto. Bills, sec. 410, 450, 451; Sto. notes, sec. 137, 138, 379, 380, 381, 386-7; Salem bank vs. Gloucester bk, 17 Mass. 1, 30, 32; Smith vs. Mercer, 6 Taun. 76. No title can be derived through a forged endorsement. Lancaster vs. Baltzell, 7 Gill and J. 468, 9 Gill and J. 342.

2. The making of a false instrument over a genuine signature is as much forgery as the making of a false signature to a genuine instrument. J. Russ. Cr. 319, Hall vs. Fuller, 5 B and C. 750, must be genuine in every respect. Chit. Bills, 287, and n (1) 747, 748, Bal. Abs. Fit. For. (A) 745; Rex vs. Hart, 7 Can. and P. 652.

3. No special intent to defraud any particular person is necessary to constitute forgery, but a general intent is sufficient; and if the *probable consequence* of the act be to defraud, that will, in law, constitute a fraudulent intent, and the intent will be enforced in law. Rex vs. Mazagora, 1 Eng. Cr. Ca. 291; 2 Russ. on Cr. 362; Archb. Cr. P. C. 342, Regina vs. Beard, 34; Eng. C. L. R. 329, (8 Can. and P.) Reg vs. Parish, 34 Eng. C L. R. 307, (8 Can and P. 94) Chit. Bills, 753.

4. The filling up of a blank endorsement for the sum of $540, when there is authority to fill up for $150 only, or when there is no authority to fill up at all, and negotiating the same with intent to defraud of course, is forgery, and the instrument is void *in toto.* Rev. Stat. 1845, p. 371, sec. 16, provides that "every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being, or purporting to be, the act of another, by which any pecuniary demands or obligation shall be, or purport to be, transferred, created, increased, discharged, or diminished, &c., &c., shall be guilty of forgery in the 3rd degree."

Rex. v. Hart, 7 Can. & P. 652, (S. C. Ry. & Moo. Cr. Ca. 486,) held by the twelve Judges of England unanimously, that the filling of a blank acceptance for 500 l. when there was authority for 200 l. only, was forgery. Fully recognised as law in 2 Russ. Cr. 321, and Archb. Cr. P. C. 342; there must be authority, Regina v. Beard, 34 Eng. C. L. R. 329; Reg. v. Parish 34 Eng. C. L. R. 307; Rex v. Forbes 32 Eng. C. L. R. 497 (7 C. & P. 224.) Goodman vs. Eastman 4 N. H. R. 455, doctrine fully discussed and defined. Breach of *special confidence or trust,* or negligence, confined to cases of a fraudulent use, or abuse, of a general authority, and does not extend to a case of forgery. Principle of one or two innocent persons &c., does not apply, and no party to mercantile papers can be held to warrant against a fellonious forgery. Not liable in consequence of negligence. Salem B. R. v. Gloucester B. R. 11 Mass. 30, 2, 45; if a person pays, or receives a forged bill, he is guilty of negligence, must bear the loss himself, and cannot even receive back the money from the person it was received from or paid to, unless immediate notice be given, 17 Mass. 45; Sto. a9 sec. 115; Price v Neal, 3 Burr, 1354-7; Smith v. Mercer 6 Tann. 76; a plea that a blank was limited to $2336, and filled up without authority for a larger sum, and therefore non est factum, held good, though no intent to defraud appeared to make it forgery. Hall v. Bank, 5 Dana 258; a man gets a piece of paper with a name on it and makes a note over it, there being no authority, held forgery, and maker not liable. [This signature was obtained in the same manner, that the first signature of Tumilty was by Breen.] Vance v. Sary 5. Ala 370; Sto. notes, sec. 138.

It depends on the fact of authority, or not, and the doctrines of agency; as to authority, *general* and limited, Chitt. Bills, 33 & n.; a special authority must be strictly pursued, and an authority to sign a note at six months, is no authority to sign one at 60 days, and the maker is not liable (even where no forgery was charged.) Batty v. Carswell, (Story a9 sec. 169.) 2 J. R. 48; 15 J. R. 44; "if the blank be filled by a person, who is authorised to do so, it will be obligatory." (Sto. Bills, sec. 53,) [and if *not, not* of course;] Johnson v. Blasdale et al. 1 Sm. & Mar. 17; the delivery of a blank to be filled up, for a note makes the party an agent to fill up: if the authority be general, it is a letter of credit for an indefinite sum, (Russell v. Longstaffe, Dougl. 496, 514;) if limited, the note is good for the sum authorised, and void for the excess, [where there was no intent to defraud charged to make it forgery.] Superadd this element, and it must have been held forgery and utterly void.

Mitchell v. Ringold, 3 Har. & J. 159, a blank with a general authority filled up for a particular sum, altered by the agent while yet in his hands, held maker not liable. Ground not fully stated, but the reason must have been, that when once filled up for whatever sum, (the authority being general) it became a note, and the authority was then exhausted; a genuine note; and then the alteration of it without further authority was not binding, or was forgery, and made it void; when the party has used the name of another without authority, he is liable himself, but not the man whose name has been feloniously used. Bank v. Flanders, 4 N. H. 239; Sto. a9, sec. 264, 308 & n. (2) sec. 309; sec. 456; the existence of a blank does not *per se* give authority to fill up, but may be evidence for a jury. Stout v. Cloud, 5 Litt. R. 205; (depends upon) and where no holding out as having general authority, parties equally innocent, and third person deals at his peril, is bound to inquire and must bear the loss himself. Sto. a9, sec. 126 and n. (1); 127 & n (1) citing Lloyd, Paley on a9, 199 & n. sec. 131, 2; sec. 133 (p. 125,) the fact of authority, or not. Allison v. Rurdy, 6 Penn. St. R. 501. Blank endorsement to renew two notes; the two consolidated into one and the position and liability of the endorsers charged without authority, held whether authority or not, was a question for a jury; if not authorized, party not liable (no intent to defraud or forgery charged) Bell v. State Bank, 7 Blackf. 456; a printed blank at 90 days endorsed by Bell to renew note of Benbridge 90 days stricken out and thirty days inserted by clerk of the bank, by direction of Benbridge, (without any intent to defraud,) held Bell not liable, the authority was limited and that known to the bank. See Sto. Bills sec. 222, liability of endorser in blank (i. e. of a genuine

note filled up) same as when filled up, "unless there should be a *known f, and or a known mis-appropriation*," [or of course, a *forgery not known*.]

That is to say, there are these defences:

1st. That the agent being held out as having general authority, was limited by private instructions and exceeded his authority (merely) and notice ; or

2nd. That there was fraud (merely) and notice ; or

3d. That the agent was a special agent with limited authority and not held out as having a more enlarged, or general authority, (good without notice) even when no intent to defraud to make it forgery.

4th. That there was that species of fraud, which amounts to forgery, (good without any notice.)

*Usury*, and gaming are by statute, and *forgery*, by the general principles of law, good defences without notice even against a bona fide holder for value.

5th. The following cases belong to the large class, which comes short of forgery ; cases of an abuse of a discretion given as to the exercise of a general authority, which is absolute, though accompanied with a trust, a special confidence, that it will be exercised with fairness and prudence, or in good faith, according to the circumstances or contingencies contemplated : in which cases, the instrument when made, being authorized, is genuine, however much the discretion given as to the exercise of that authority may have been abused. Cases of a fraudulent use or application, of a genuinely made instrument, when the principle of one of two innocent persons &c. applies :

Taney vs. Gide, 4 Bing. 253; Putnam vs. Sullivan, 4 Mass. R. 45; Thurston vs. McRown, 6 Mass. 428; Storer vs. Logan, 9 Mass. 59; Bank of Am. vs. Woodworth, 18 J. R. 315 reversed ; Mitchell vs. Culver, and Mech's Bank vs. Schuyler, 7 Cowen R. 336; Herbert vs. Heire, 1 Ala. R. 18; Huntington vs. Bank, 3 Ala. R. 186; and cases of a clear general authority, with or without misappropriation, or fraudulent use ; Chit. Bills, 33 & n, (i) and cases cited ; Smith vs. Mingory, 1 M. and S. 87; Cruchley vs. Clarance, 2 M. and S. 90; Braham vs. Rayland, 3 Stew. R. 260; Roberts vs. Adams 8 Pov. R. 297; Violett vs. Patton, 5 Cranch. 142 ; Bank vs. Smith, 5 Ohio R. 222.

A blank for the sum authorized for $200, filed up for $700, and discounted in bank; held liable, case briefly reported, not considered at length, and no authorities cited, no intent to defraud, a forgery charged or considered—put on ground of commercial paper and reposing confidence generally. Case not good authority; and if there was a negotiation with intent to defraud, it was forgery, and the decision is not law, and is not supported by any authority, I have been able to find.

If these positions be correct, then the court below committed error.

1st. In ruling out the testimony of Bernard Dillon and Henry Hudson : and,

2nd. In ruling out the testimony of Edward Walsh : and,

3rd. In refusing the plaintiff's instruction, and,

4th. In giving the instruction (of his own motion) for the defendant.

## Bay, for defendant.

1st. The note was transfered to the bank before maturity, consequently it was taken free of all equities between antecedant parties, the bank having no notice of such equities. Story on promissory notes, sect. 178. Besides in this case, the note is to be treated exactly as if it had been filed up before the defendant endorsed it, ib sect. 122.

2nd. The second instruction asked, was not warranted by the evidence. But even if it were the instruction was properly refused. The fact that a bill or negotiable note was obtained by fraud, affords no defence where the instrument comes into the possession of *a bona fide* holder for value, without notice, and before it is due. Chitty on Bills, p. 79.

3rd. The declarations of the defendant were properly excluded, the court also properly refused to permit the defendant to impeach the testimony of his own witness, who completely disproved the pretended facts asserted by the defendant,

RYLAND, Judge, delivered the opinion of the court.

From the above statement, it will be seen that the appellant, places his reliance for a reversal of the judgment of the court below, upon the ground, that the facts disclosed in this case, amount to forgery in the obtaining of the signature of Tumilty as endorser on the note sued on. And this is the only point I shall consider in this case.

In order therefore to the better understanding of the facts, I will here insert the evidence of Bernard Dillon, Henry Hudson, and of George Breen.

The plaintiff called George Breen the maker of the note as a witness, who testified, that he knew the defendant that the note sued on, which is shown to him, as follows: "$540,00, St. Louis Dec. 12th 1846. Four months after date, I promise to pay to the order of Richard Tumilty, five hundred and forty 00-100 dollars for value received, negotiable and payable without defalcation or discount at the bank of the State of Missouri.                    GEORGE BREEN."

Endorsed "pay to Bernard Dillon, or order" Richard Tumilty. Pay to the bank of the State of Missouri.        BERNARD DILLON.

And written across the face with red ink. "Protested for non-payment. April 15th 1847, John Smith N. P. fees 1 75-100" witness said. "This is the signature (pointing to it) of Richard Tumilty, when it was written on the back of this note, we were in his room, and I saw him write it." "That is my signature as maker, and that is Bernard Dillon's as endorser." The above note was then read to the jury, and the plaintiff, then read in evidence the protest and notice, which were in proper form and to which there is no objection and which it is not necessary here to notice, and then the plaintiff rested his case.

The defendant, then after having called Richard King, who was about detailing a conversation which he heard between Tumilty the defendant and said Breen, and which conversation was objected by plaintiff and ruled out by the court; called as witness George Breen, who testified, "that he was at the house of defendant, on 22d Nov. 1846. That he came out on horseback, on Saturday evening, to see Tumilty on some business about a house, he had built for him. Stayed all night at Tumilty's. The next morning Tumilty endorsed two notes in blank at request

of witness said—we were standing near the stable yard fence, I had pen and ink in my pocket and printed blank notes in my hat. I asked Tumilty to endorse one for me in blank—he did so, he wrote his name, resting on the top rail of the fence. Tumilty had previously endorsed notes for me in blank : after he had written his name on this note, I looked at it and told him his signature was not written well enough to go in bank ; and asked him to write another, he did so. I took both notes into town with me—I never was asked by Tumilty, what sum I designed filling up the blank with *at all*. Tumilty endorsed for me in blank, as he had always done before, without asking any questions, I did not ask him to endorse a note for $150, nor for any particular sum whatever, one of these two blanks I filled up for $620, and put in bank. The other was not put in bank at all. Being asked, where that other note is, the plaintiff's counsel produced a note as follows to wit: $550,00, St. Louis Nov. 25th 1846. Four months after date, I promise to pay to the order of Richard Tumilty, five hundred and fifty dollars for value received, negotiable and payable without defalcation or discount, at the bank of the State of Missouri—signed Lewis E. Brooks endorsed Richard Tumilty, George Breen, which the witness says is that other blank note, I thought, I'd just let Mr. Tumilty work out his passage, and then I would show this, when he had got through. The plaintiff's counsel had also in court some five or six other notes, which had been endorsed previously by defendant and had been negotiated and taken up, but the witness states, that the one above set forth is the identical one, which was endorsed on the top rail of the fence, and the one on which the name was written so badly. The witness further says, one of these notes was filled up for $620, and put in bank, and I lifted it ; and I would have lifted the other too, if Tumilty had paid me for the house I built him—one of the notes written at the corner of the fences, that Sunday morning never was in bank, the other filled up with $620, *was* put in bank and I lifted it. I have suffered enough by that man Tumilty. This $540, note I took to Dillon, to get him to endorse it. Tumilty's name was then on the note and the sum was blank. I told Dillon the note was to be filled up with $540, when I took it to him to endorse it—cross examined. "I had obtained blank signatures to notes of Tumilty, before this time. There had been eight or nine of them before. These accomodation endorsements of Tumilty for me commenced in the year 1845. From time to time as I found it necessary, I got him to endorse notes in blank for me to fill up and put in bank to get discounted, to help me through my business from 1845 up to the winter of 1846, there were eight or nine of these

endorsements I think. Question.—In all those instances, were the notes entrusted to you in blank, after being endorsed by Tumilty? Defendant, I object to that question, for the reason, that the manner in which previous notes or endorsements had been obtained was not in question here and the whole evidence, about the previous notes was objected to for irrelevancy. The court overruled the objection and the defendant excepted. Ans. Those notes were in all cases entrusted to me in blank after being endorsed by Tumilty. I used these as it became necessary for me and I always filled up the sums myself before I put them in bank. These are the two notes Tumilty signed for me at the corner of the fence—(referring to the $620 note and the $——note above set out.) This note for $540, (the note sued on) I got endorsed by Tumilty, sometime in May 1846, together with another note: Tumilty signed them at the house near the New Market, two blank notes. I swear positively, that I got this the note sued on in May or June 1846; I never used it until afterwards when I needed it. This $540 note, now in suit, is not either of them signed by Tumilty at the fence.

I never used the note, the signature on which by Tumilty, I told him was not well enough to go in bank. This note is now in my possession and never was out of my possession. Re-examined. How do you know, that this is not the other note signed by Tumilty at the fence? Because it has never been out of my possession since. Question. Did you or not ever tell Mr. Linchey or Mr. King, that you filled up both notes, endorsed at the fence, one for $620, and the other for $540, and that you put them both in bank, when you were to put one note in bank for $150: and no more? Plaintiff objects to the question for incompetency. Court sustains the objections and defendant excepts. I did not tell Tumilty, when he endorsed these notes, that I should fill them up one with $620, and the other with $540, I got both notes endorsed by Tumilty with his assent for me to use them as I pleased and when I pleased; no particular sum was ever mentioned.

Hugh Linchey examined for defendant. I once endorsed a note for Breen, which was to go in bank—never but once. Dont know exactly when, but the note was in blank with Tumilty's name on it as endorser. The defendant then proposed to prove by witness, that George Breen had admitted in his presence, that he had got Tumilty to endorse his name on two blanks in the manner stated by Breen himself above, with the understanding that he was endorsing one note only for $150, and that Breen clandestinely took away both blanks and filled them up one for $620, and the other for $540, (the note sued on here) and that he

had put them both in bank. The plaintiff objected to the evidence for incompetency as against the bank, the plaintiff. The court sustained the objection and the defendant excepted and the witness withdrew.

Bernard Dillon, a witness for defendant: one of the notes in question for $540, endorsed by Richard Tumilty and deponent, is shown to deponent who says that is his signature, that be endorsed it for Breen and when he endorsed it, it was in blank. Tumilty's name was on it, when I endorsed it. I am not positive as to the time I endorsed it, but think it was about the 12th Dec. 1846, as near as I can recollect. Breen told me when I endorsed it, that he would fill it up for $300 or 350, I am positive he told me one of these sums; but I dont remember which, afterwards I signed a check for Breen to draw the money and put an "F" in the check and on this account the check was returned to me by Breen, because he said, he thought it would not go in bank. It was then torn up, and another executed by me without "F." He did not ask me to sign another note, at that time, that I recollect. He did not tell me how to get Tumilty's name on the note, I am not positive, whether the check was in blank or filled up. I dont recollect for what sum it was drawn, I did not examine it very closely to see. The cross examination is not copied, nothing material to this case in it.

Henry Hudson: one of the notes is shown him, the one for $620, he says that, that is his signature on the back of the same. I believe it was in the early part of January in the present year (1847) that George Breen called on me and told me that he wished to put a note in bank and requested me to endorse for him, I asked him the amount for which he wanted me to endorse : He told me $300. I then asked him, who was going to endorse along with me. He said Dick Tumilty. He said "Henry" meaning me, that Tumilty is one of the best men in the State. I agreed to endorse it, expressly understanding it was to be for three hundred dollars. I did not endorse the note at this time and cannot say whether it was on the evening of the same day or the following day that I endorsed it. I rather think it was the day following, but not certain. The note was endorsed in my own room, and a blank check signed by me at the same time for the proceeds. These Mr. Breen took up and left the room. I am not aware of any other conversation at this time. The note was in blank when I endorsed it. Cross examined, I am not aware, that after I had endorsed the note, Breen said he would fill it up for $300, I do not believe that any thing of that kind, was said, Mr. Breen appeared to be in a hurry and there was very little said, at the time, when Breen brought the note to me, when I endorsed it, I am not

·aware that any thing important was said by Breen.   I cant say that he said any thing at all that I remember, on the occasion of the endorsing, I dont remember any thing that Breen said before or after the endorsing, after I had endorsed the note, there was nothing of this kind said, by Breen, to wit—that he would fill it up with $300, nor any thing to that effect, that I recollect, when Breen first called on me and asked me to endorse the note, I can't say whether or not he had it with him.  He did not produce it, at the time that Breen first called on me, and asked me to endorse this note, he did not say, that I recollect, that if I would endorse this note in blank, he would fill it up with only $300.   There was nothing then said about endorsing a note in blank, I mean, when I say it was the express understanding, that the note was to be filled up with $300, that that was my understanding.   I can't say, whether or not Breen at that time told me he would bring me a blank note to sign—I dont know that this note, here exhibited is the paper, that I agreed to sign in the first conversation, at the time I did sign, Tumilty's name was on it and the only one on it.   I expected Breen to fill up the note.   On being asked, why deponent, did not fill up the note himself, he replied that he considered Breen a man of high honor, and integrity and one in whom he placed implicit confidence and thereupon he entrusted the filling up of the note entirely to him.   Direct examination resumed, when Breen first spoke to me, he told me he wished to put a note in bank for $300, and he wished me to endorse for him, I can't say that at that time Breen had a $300, I recognize this note here exhibited to me for $620, as the note that I endorsed for Breen, with the understanding at the time, that it was to be filled up with only $300, I mean that such was my understanding, I got this understanding the time that Breen requested me to endorse for him.   This paper on which this $620, note is written, and printed was not then shown to me.   This (the $620, note) is the paper which Mr. Breen brought to me to endorse at our second meeting.   This is the only one that was spoke of at either interview.   On the occasion that I endorsed the note, there was nothing at all said about a note that I remember, excepting Breen handed me *this* paper, in blank, meaning the $620, note and I endorsed it."

There was other evidence given and excluded, on motion from the jury, but the above is the most important and indeed may be said to be *the evidence* in the case before the jury.

The defendant then asked the court to give the instructions above set forth in his statement of the case numbered one and two, which were refused, and the court then gave the instruction therein set forth on its own motion.

RICHARD TUMILTY vs. THE BANK OF MO., Garnishee of Wm. Smith.

I cannot come to the conclusion, that the evidence in this case will warrant this court in saying, that the endorsements were forgeries. I am satisfied on the contrary, that the testimony taken in its full latitude for the defendant does not make the endorsement of either Tumilty or Dillon a forgery. I have examined many of the authorities cited by defendants counsel and would fully agree with most of them. But the facts here, do not go beyond a breach of good faith, a breach of confidence. Here is a person in the habit of endorsing for another, in blank, trusting to him to fill up and to use the notes for what amount and at what time, he may need them most, giving full faith in his prudent use of said authority.

The notes are used from time to time ; and paid, or in the language of the witness "lifted" at maturity, one of these notes comes to the plaintiff in good faith for value, without any suspicion of a breach of confidence, of any fraud, and because the defendant says the note was to have been for a much smaller sum, he will not now pay it, says it is forgery.

I have stated, that the facts here do not extend beyond a breach of confidence.

I have my doubts whether as to the defendant Tumilty, they even go that far. There is a great deficiency in his proof of the charge. The witness Breen, gives a reasonable account of the transactions of the endorsements at the fence : and he states, that the note sued on, in this case, is not one of those then and there endorsed.

But had the defendant made out by proof what his counsel contends he has in this case, still in my opinion it would then have only amounted to a breach of confidence and not to a forgery. To declare such a transaction as is in proof in this case, a forgery, would give cause of just and serious alarm to the commercial community. It is better, that he who places implicit confidence and thereby gives the power of injury to another, should suffer himself, rather than that the public should receive detriment from such act.

The case from 5 Ohio Rep. 222, Bank vs. Smith is an authority in point, and I am satisfied, that justice, public policy, and the interests of society are in unison with the law, in asking of this court an affirmance of the judgment of the court below.

The other judges agreeing this court accordingly affirms the judgment of the court below.