THE STATE OF MISSOURI, Respondent, *v.* ADOLPH E. KROEGER, Appellant.

1. *Practice, criminal — Indictment, allegations in — Repugnancy.* — An indictment charged defendant with forging a check "purporting to be the act of M. E. Susisky, treasurer of the city of St. Louis." The check afterward set out showed the signature of "M. E. Susisky, treasurer." *Held*, that the two allegations were not inconsistent with and repugnant to each other. (State v. Finley, 18 Mo. 445.)

2. *Criminal law — St. Louis city treasurer — Blank check, filling out and using for a different purpose from that directed, constitutes forgery.* — The treasurer of the city of St. Louis left with A. certain blank checks, with directions to fill them up to the use of holders of warrants against the city; but A. took one of the checks, inserted the date and amount, and the words "cash or bearer" in place of the words "order of," erased from the printed blank. By whom the words were erased did not appear. A. converted the check to his own private use, by depositing it in bank the same day on his private account, and drawing the money on it for his own use. *Held*, that under the statute law of this State (Wagn. Stat. 470, § 16) he was guilty of forgery in the third degree. As the check had been signed with specific instructions to use it for a certain purpose, A., in thus filling it up for a different purpose, clearly made a false instrument.

*Appeal from St. Louis Circuit Court.*

The first count of the indictment charged that said Kroeger, "on the eleventh day of December, in the year of our Lord one thousand eight hundred and sixty-nine, at St. Louis, in the county of St. Louis aforesaid, with intent then and there to injure and defraud, did unlawfully and feloniously falsely make, forge and counterfeit, in county and State aforesaid, a check for the payment of money, purporting to be the act of M. E. Susisky, treasurer of the city of St. Louis, a municipal corporation duly organized and existing under and by virtue of the laws of the State of Missouri, in words and figures following:

'OFFICE OF CITY TREASURER,
'No. 143.                                    ST. LOUIS, *Dec. 11, 1869.*
'TRADERS' BANK,

'Pay to the order of cash or bearer,
'Six thousand - - - - - - - | United States Internal Revenue Stamp. 2 Cents. | 100 Dollars.
'$6,000.

'M. E. SUSISKY,
'*Treasurer.*'

With intent then and there to defraud and injure the Traders' Bank, a bank at St. Louis, in the county of St. Louis aforesaid, duly incorporated under and by virtue of the laws of the State of Missouri, out of the sum of six thousand dollars, against the peace and dignity of the State and contrary to the form of the statute in such case made and provided."

The second instruction asked by the defendant, and refused by the court, was as follows:

"2. If the jury find from the evidence that M. E. Susisky signed the paper set out in the indictment, in blank, and delivered the same to defendant alone, or with another, and gave the defendant authority to fill up said paper, and use the same or its proceeds for certain purposes designated by Susisky, and that the defendant, under this authority, filled up the blanks in said paper, then the jury ought to acquit the defendant, even though they may believe that defendant used said paper or its proceeds for a purpose or purposes not designated by said Susisky."

The testimony of Susisky showed that the printed words "the order of" had been struck out by ink lines; that the words and figures "No. 143," and the words and figures "December 11, 1869," "cash or bearer, six thousand dollars," had been inserted.

The third paragraph of the instruction given by the court, of its own motion, was as follows: "If the jury believe, from the evidence in the case, that M. E. Susisky was, on or about the 2d day of December, 1869, treasurer of the city of St. Louis, and that at said time he delivered the check described in the indictment to the defendant, already signed by him, with the name of 'M. E. Susisky, treasurer,' with the date, payee and amount left blank, with authority to fill up and use the same for the use and benefit of the city of St. Louis, and to fill up and use the same for no other purpose; and if you further find from the evidence that the defendant, on or about the 11th day of December, 1869, at St. Louis city and county, feloniously filled up said blanks by inserting 'December 11, 1869,' 'cash or bearer,' 'six thousand,' and '$6,000,' with intent then and there to use the same for his own use and benefit; and that he did so use

the same for his own use and benefit, and not for the use and benefit of said city of St. Louis, with intent to defraud and injure as charged, then this constitutes the crime of forgery in the third degree, and so you should find."

*Lackland, Martin & Lackland,* and *Allen,* for appellant.

I. As substantially the same questions are raised upon the motion to quash the indictment and the motion in arrest of judgment, they will be considered together. The allegations in the indictment are repugnant to and inconsistent with each other. In the indictment it is averred that the defendant forged a check which purported to be the check of M. E. Susisky, treasurer of the city of St. Louis, and the check set out in the indictment does not so purport. As to the meaning of the word "purport," see Downing v. The State, 4 Mo. 572; Bright *et al.* v. White, 8 Mo. 421; State v. Page & Bacon, 19 Mo. 213; 2 Russell on Crimes, 380; Commonwealth v. Kearns, 1 Va. Cases, 109; Arch. Crim. Pl., 5th ed., 47; Rex v. Reading, 1 East, 180; 2 Leach, C. C., 590; Rex v. Gilchrist, 2 Leach, 657; Rex v. Edsall, *id.* 662; State v. Smith, 31 Mo. 120; State v. Waters, 3 Brevard, 507; State v. Shawley, 3 Haywood, Tenn., 256. It is true, the instrument set out in the indictment has on its caption the words "office of city treasurer," but there is no indication of the office of city treasurer of the city of St. Louis, and the instrument does not so purport. Again, this caption forms no part of the check. It is in nowise necessary to make it a complete instrument. Any one could date a check at the city treasurer's office. It is also true that the word "treasurer" follows Susisky's name on the check, but this no more purports to be his act as "treasurer of the city of St. Louis" than it does as treasurer of any other city, or corporation, or voluntary society.

II. The indictment is insufficient because the offense is not averred in the language of the statute, to-wit: that it does not allege that the instrument set out was, or purported to be, the act of another, by which any pecuniary demand or obligation was, or purported to be, transferred, created, increased, discharged or

diminished, or by which any rights or property whatsoever was, or purported to be, transferred, conveyed, discharged, increased or in any manner affected. (Gen. Stat. 1865, ch. 202, p. 795, § 16.) It is true, the case of The State v. Fenly, 18 Mo. 445, decides this point against the defendant, and, as an authority, chiefly relies upon the case of The People v. Rynders, 12 Wend. 425. Both of these cases were decided, however, by only a majority of the court, and they must be admitted to be a departure from the rules of the criminal law which require the indictment to follow the language of the statute upon which it is drawn, descriptive of the offense.

III. Where an intent to defraud a particular person is averred it must be shown either, first, that the instrument, if genuine, would be the obligation of such person; or, second, that the defendant passed, or attempted to pass, the instrument to such person, as true, with knowledge of its real character. (United States v. Shelmire, 1 Bald. 370.) There is no presumption of law arising upon the face of the check, that defendant intended to defraud the Traders' Bank; because, if it were genuine, it would not be the contract of that bank. (2 Pars. Bills and Notes, 61, note.) And the proof utterly fails to show any such intention to defraud. The defendant never presented the check, for any purpose, to the Traders' Bank; but, on the contrary, presented it to the First National Bank, where it was deposited to his credit.

The third paragraph of the charge or instruction given by the court presents, in substance, to the jury this proposition, to-wit: that if Susisky signed the check in blank, and delivered it to defendant with authority for him to fill up and use it for the benefit of the city of St. Louis, and that defendant, under these circumstances, filled up and used the check for his own use, with the intent to defraud, etc., then the jury should find him guilty of forgery in the third degree. We deny that this instruction given by the court correctly presents the law applicable to the facts. On the trial before the Criminal Court, the counsel for the State relied upon three cases decided in England, in which the court held that where checks signed in blank were delivered

to the defendants, with authority to fill them up with certain definite sums, and they were filled up with greater sums than those named, and the excess converted to the use of the parties filling them up, they were guilty of forgery. (Regina v. Wilson, 2 Car. & Kerr, 527; Rex v. Minterhart, 2 Brit. C. C. 486; 7 Car. & Payne, 652; Regina v. Bateman, 1 Coxe C. C. 186.) In regard to these cases we have to say that they are not in point. The questions in them do not arise in this case. The doctrine of these cases has been decided by this court, in three cases, to be otherwise; in which it has been held by this court that where instruments signed in blank were delivered to third parties, with authority to fill them up with certain specified sums, the fact that they were filled for amounts greater than those limited did not constitute forgery. (Tumelty v. Bank of Missouri, 13 Mo. 276; Farmer's Bank v. Gertin *et al.*, 34 Mo. 119–22; Henderson v. Bendervoort *et al.*, 39 Mo. 373; Spitler v. James, 9 Am. Law Reg., N. S., 605.) On same point see Trustees of Iowa College v. Hill, 1 Am. Law Reg., N. S., 744, note; State v. Flanders, 38 N. H. 324; Commonwealth v. Sankey, 22 Penn. 390; Hill v. Tennessee, 1 Yerg. 76. The last three cases would seem to establish the principle that if Kroeger obtained the check in question, signed in blank by Susisky, under *a false and fraudulent representation or pretense* that he would fill up and use it for the benefit of the city of St. Louis, and that if he afterward filled up and converted the check to his own use, it would not be forgery. It is true that in all the text-writers, from Coke and Hawkins down to Wharton, it is laid down that if one be employed to write a will, with instructions as to what it shall contain, and he write the will materially different from the instructions, and fraudulently procure the testator to execute it, under the belief that it is drawn agreeably to his instructions, it will constitute forgery. But we submit that this is a legal heresy; that the doctrine of the text-writers on this point is not supported by the cases referred to by them, and that it has been denied on principle by all the subsequent cases, with one single exception. This erroneous doctrine is stated in 3 Inst. 170; 2 East, P. C., 855; 1 Hawk. P. C., ch. 20, §§ 2–6; Bacon's

Abr., tit. Forgery A ; 2 Russell's Crim. Law, 318–22, and others of a more modern date. The texts cite and are founded upon Comb's case in Noy's Reports, 101, and also reported in Moore's Reports, 769. These texts are opposed by the case of Sir John Marvin's will (3 Deyer, 288), which is directly in point, and opposed in principle by the cases of Regina v. Collins, 2 Moody & R. 461, and Regina v. Chadwick, *id.* 546, decided in England, besides the cases cited herein decided in the United States. There is also one exception to the uniform decisions in the United States in the same direction. We allude to the case of The State v. Shurtliff, 18 Me. 371. Weston, C. J., in delivering the opinion, cites 2 Russell, 317, which, in turn, refers to 2 East, 855 ; Noy, 101 ; Moore, 759 (the old Star Chamber case) ; 3 Inst. 170 ; Hawk. ch. 21 ; Bacon's Abr., tit. Forgery A. And thus the same ancient chronic errors are marshaled without any allusion to the modern cases to which we have above referred. We would refer the court to the opinion of Judge Agnew, of the Quarter Sessions, in the case of Commonwealth v. Sankey, *supra*, with the opinion of the Supreme Court by Black, C. J., in the same case, in which the opinion of Agnew, J., is fully adopted, to which opinions we are indebted for some of the views here expressed. The only case decided in America or England we have been able to find, which appears to cover the principles involved in this case closely, is that of Putnam *et al.* v. Sullivan *et al.*, 4 Mass. 53. In the case at bar, the check was signed and delivered by Susisky to Kroeger in blank, accompanied with a trust or confidence, in the language of Parsons, C. J., in the case referred to. And this is the key which unlocks this transaction, and makes the proposition of law involved in it of easy solution. If the check was delivered by Susisky to Kroeger in blank, coupled with a trust or confidence, and that trust or confidence embraced authority for Kroeger to fill it up for any purpose, then there can be no forgery in the case, because then the forgery would be predicated solely upon a mere breach of trust or confidence.

The error in the instruction of the Criminal Court, of which we here complain, is apparent in this : that it makes the fraudulent

use — and that alone, it may be — of a clearly granted power to fill up a check, a forgery. Now it is perfectly clear, and can not be denied, that the crime of forgery consists of two elements, to-wit: first, a false making; and, second, a fraudulent intent. And the fatal error in this instruction is that it entirely ignores the false making, and tells the jury that although Kroeger may have had power to fill up the check, yet if he did so with a fraudulent intent he is guilty of forgery. Now, if Kroeger had authority to fill up the check, as we have seen, there was no false making, and consequently that element necessary to constitute the crime of forgery is wanting. We are unable to see any escape from this conclusion.

In conclusion, we have only to add on this point that if it be true that Kroeger had authority to act as the agent of Susisky in filling up the check, then it ought to be regarded as having been filled up and made a complete instrument by Susisky himself, in his own proper person; and therefore the transaction disclosed in this case, so far as legal principles are concerned, ought to be viewed in precisely the same light as if Susisky had filled up this check, and thereby had made it a complete and genuine instrument himself personally, and had delivered it to Kroeger with instructions for him to apply it or its proceeds to a particular named purpose, and Kroeger, in violation of such instructions, had converted the check or its proceeds to his own use. This would certainly be a fraud and a wrong on the part of Kroeger, unless he could justify his action; but it must be admitted that a fraud or wrong is not necessarily a forgery, and it is just as certain there would be no forgery in this transaction because there would be no false making. And this, as it seems to us, is the only logical or legal conclusion which can be reached on this point.

*Cline, Jamison & Day*, with whom was *Chas. P. Johnson*, Circuit Attorney, for respondent.

The check in evidence embraces all the elements contained in the clause of the statute creating the forgery attempted to be charged. (State v. Fenly, 18 Mo. 445; Gen. Stat. 1865, ch.

211, p. 842, § 828.) The indictment not only conforms to the requirements of our statute, but goes far beyond what would be a good and sufficient count under it. It describes the forged instrument by the name by which it is usually known, and sets it out in its words and figures.

It has been urged that the indictment should aver that M. E. Susisky was treasurer of the city of St. Louis. But at best such averment could only be *descriptio personæ*, as the offense would be complete under our statute if there was no such person as M. E. Susisky, or the corporation of the city of St. Louis, or the office of treasurer of the city of St. Louis, in existence. (Gen. Stat. 1865, ch. 202, § 26.)

This is no case of breach of trust. If he had power to make an instrument and utter it, it was simply to fill up the blanks with the name of the holder of a warrant, and fill into the check the amount of the warrant and deliver it in satisfaction, and take up the warrant as a voucher for the check. If he had any authority at all, this was its extent; and if he had this power, he never exercised it in a single instance. All the checks that were used for the city of St. Louis in the absence of M. E. Susisky, its treasurer, were filled up by Mr. Dougherty, the deputy treasurer, who had power of attorney from Susisky to conduct the office in his absence, which lasted twenty-one days, and during which time the prisoner is said to have filled up checks and drawn out the money of the city of St. Louis to the amount of $46,000 and converted it to his own use.

Our statute creating or defining the crime of forgery enlarges upon the common-law definition and covers almost every conceivable alteration or felonious interference with instruments of writing creating or transferring, enlarging or diminishing money obligations. (Gen. Stat. 1865, ch. 202, §§ 8, 16.) No special intent to defraud is necessary to constitute forgery. If the probable or natural consequence of the act be to defraud, that will, in law, constitute the fraudulent intent of the statute, and such intent will be enforced in law. (1 Eng. Crim. Cas. 291; 2 Russell on Crimes, 362; Arch. Crim. Pr. 342; Regina v. Beard, 34 Eng. Com. Law, 329; Regina v. Parrish, *id.* 307;

8 Car. & P. 94.) The making a false and fraudulent instrument over a genuine signature is as much a forgery as the making a false signature to a genuine writing. (Hall·v. Fuller, 5 B. & C. 750.) The instrument must be genuine in all particulars. (Rex v. Minterhart, 7 Car. & P. 652; Regina v. Wilson, 2 Car. & K. 528; 2 Coxe C. C. 360, 426; Rex v. Hart, 1 Moody C. C. 486; Regina v. Balmer, 1 Coxe C. C. 186.) Authority to do a particular thing furnishes no authority to do another and different thing. (2 Bish. Crim. Law, 306, 477.) A signature fraudulently obtained has been held to be a forgery. (State v. Shurtliff, 6 Shepley, 368; Rex v. Hart, 9 Car. & P. 752.) In Rex v. Hart, Ryan & M. Crim. Cas. 486, it was determined by all the judges of England, without a dissent, that the filling up a blank check with £500, when authority was to fill up for £200, was forgery. The same doctrine is clearly recognized in 2 Russell on Crimes, 321; Arch. Crim. Pr. 342. The act must be authorized, otherwise it is a forgery. (Regina v. Beard, 34 Eng. C. L. 497; 7 C. & B. 294; Goodman v. Eastman, 4 N. H. 455.)

The entire argument of the learned counselors for the prisoner proceeds upon a mistaken notion that the principles applicable to civil cases furnish the rule for determining what acts are necessary to constitute the crime of forgery in a State prosecution. In two or three of these civil cases remarks are found apparently favoring their position. Where this error occurs it is mostly out of mere inadvertence, and can furnish no force or authority in a criminal case, as the matter of mere civil liability could in no sense determine the question of the guilt or innocence of the party filling up the blanks contrary to his authority. This question could alone be determined by the criminal tribunals of the country, so as to furnish precedents and authority for the case at bar.

It is claimed and stated that the doctrine on this subject is different in this country from that of England. This we deny. English courts have repeatedly held that forgery could not be pleaded in bar against the holder; but the same courts have as often held the accused guilty of forgery on criminal prosecution. (2 Car. & K. 528; 7 C. & B. 652; 1 Coxe C. C. 186; 1 Moody

C. C. 486; 2 Coxe C. C. 360, 426.) The doctrine held on the civil side of the court was clearly and fully laid down. (Russell v. Longstaff, Dougl. 514.) This doctrine has never been departed from by the English courts, so far as we have been able to find. It is contended that this doctrine has recently undergone a change in the courts of that country. (See Awde v. Dixon, 6 Excheq. 869.) Parke, B., in his opinion in this case, remarks that a party who takes a blank note can not recover upon it unless the person from whom he receives it had a real authority to deal with it. There was no such authority in this case. State v. Santee, 22 Penn. 39, and State v. Flanders, 38 N. H. 324, are cases where the signatures to genuine instruments were procured through fraud and false pretenses, and therefore not forgeries; in which we fully concur. This has always been the doctrine of the Court of King's Bench and all other courts of England, except one case at Star Chamber, many years ago, in the execution of a will, decided *ex parte*. (Regina v. Collins, 2 Moody & R. 461; Regina v. Chadwick, *id*. 545.)

We have, in conclusion, one more consideration to urge. It is the relation sustained by the forger to the instrument forged, and the fund sought to be reached by this forgery. This check was forged in the city treasurer's office. The funds of the city against which it was drawn were on deposit for the city in its banks of deposit. The prisoner knew he had no power to erase and fill up the check for his own use. He also knew that no one could confer any such power upon him. He knew the fund could not be interfered with without the intervention of a joint maker. Until the co-surety has joined in its execution by signing the space left by defendants for his signature, it was invalid and incomplete. It was not a note signed in blank to be filled up. It was a joint note, signed by one of its makers only, and could not become complete until the other had signed. And the plaintiff took it solely on the false representation that the defendant had authorized it to be delivered as a complete and binding instrument. In principle, this case is not unlike the creation and delivery of a note by affixing the name of the maker without any authority whatever. The declaration made, that the party signing the name

had authority to use the name of another, could in no sense make the payee a *bona fide* holder unless it could be shown that he had authority to sign the name of the maker.

WAGNER, Judge, delivered the opinion of the court.

The defendant was indicted and convicted in the Criminal Court for forgery in the third degree. The charge in the indictment was that on the 11th day of December, 1869, with intent to injure and defraud, he willfully and feloniously falsely made, forged and counterfeited a certain check for the payment of money, purporting to be the act of M. E. Susisky, treasurer of the city of St. Louis, with intent to defraud and injure the Traders' Bank.

As it is claimed that the indictment is defective, it is sufficient to say that it is abundantly good according to the decision of this court in the case of The State v. Fenly, 18 Mo. 445.

The main question, and only question requiring any attention, is whether the crime with which the defendant stands charged constitutes forgery. In substance the testimony at the trial was that Susisky was treasurer of the city of St. Louis, and that he deposited the moneys of the city in seven of the principal banks of St. Louis, amongst which were the National Bank of the State of Missouri and the Traders' Bank; that on the 2d day of December, 1869, Susisky was called away from St. Louis to the city of New York on private business, and immediately before leaving signed a couple of checks, in the blank form set out in the indictment, upon the various banks in which the moneys of the city were kept, and left them in the office of the city treasurer, uncut from the different check-books of the city for the different banks, and also gave his deputy city treasurer, Wm. Dougherty, a power of attorney to act in his place during his absence from the office; that on leaving the office for New York, he requested the accused, who had formerly been city treasurer, to call into the office occasionally, supervise his deputy, and see that everything was properly conducted; that Susisky, on leaving the office, placed the check-book of the National Bank of the State of Missouri in the large safe of the treasurer's office, and directed

Dougherty and the defendant to fill up the checks on the National Bank of the State of Missouri to the use of the holders of warrants against the city as they were audited and presented, and if the funds of the city in said bank should become exhausted, then they might have recourse to the Traders' Bank; that the funds of the city in the National Bank of the State of Missouri and the blank checks of Susisky upon that bank were sufficient to meet all demands of the city, and pay all warrants audited and allowed against it until the return of Susisky, which occurred on the 22d or 23d day of December, 1869; that the defendant called in the treasurer's office almost daily, overlooked the affairs of the office, but filled up no checks to the use of the city or for the use of persons having claims or warrants against it, all this being done by Mr. Dougherty; that on the 11th day of December, 1869, the defendant took from the check-book ·of the Traders' Bank, which was kept in the office desk of the treasurer, and the check set forth in the indictment, inserted the date, the words "*cash or bearer*," and the sum of $6,000 in words and figures; that the bank check had the printed words "*order of;*" that these words were erased by running the pen across them in double lines, but by whom this erasure had been made could not be stated; that the defendant converted the check thus drawn to his own use, by depositing it on the same day to his private account in the First National Bank, which sent it to the clearing-house, where it was paid by the Traders' Bank, out of the funds of the city of St. Louis which had been deposited with it.

It is contended that these facts do not constitute the offense of forgery; that defendant's filling up the check contrary to his authority, and his conversion of the money to his own use, simply amounted to a breach of trust and confidence, for which he could not be punished criminally. In support of this view the class of cases have been referred to which hold that where a person indorses a note in blank, with the understanding that it shall be afterward filled by the maker with a certain amount, and the maker fills the note with a larger amount than that agreed upon, this conduct on the part of the maker only amounts to a

breach of confidence, and it will be no defense to an action on the paper in favor of an innocent indorsee for value.

Those cases are civil cases, and founded upon principles of commercial law. Where there is original authority for the issuance of a negotiable instrument, any latent defect will not avoid or affect it in the hands of a *bona fide* or innocent holder. A general indorsement on a blank note is a letter of credit for an indefinite sum; and where it is filled up, and there are no circumstances of suspicion to put the indorsee on his guard or to call forth inquiry, the indorser will be estopped from disputing the regularity of the transaction. (See Tumelty v. The Bank, 13 Mo. 276; Farmers' Bank v. Garten *et al.*, 34 Mo. 119; Henderson v. Bondurant *et al.*, 39 Mo. 369.)

In civil cases this rule is founded in commercial policy, and also in the doctrine announced by Lord Holt in Horn v. Nichols, 1 Salk. 289, that where one of two innocent parties must suffer by the fraud of a third person, he who has trusted such third person and enabled him to deceive the others, is to abide the consequences of the fraud, however innocent he may be in other respects.

The leading case relied on by the counsel for the defendant is Partman v. Sullivan, 4 Mass. 45. In that case one of the defendants being abroad in Europe, the other, having occasion to be absent, intrusted with a clerk of the house to which they belonged a number of papers on which one of the firm had written the name of the firm in blank. These papers were to be used for particular purposes by the clerk, and he was directed to deliver one of them to a particular individual, who afterward, by fraud and imposition, obtained four of the papers instead of one, and having used one of them for the purpose for which the house had directed a blank indorsement to be given him, and another for making a note, which he negotiated to the plaintiff, with the indorsement remaining in blank, it was held that the indorsers were liable, on the ground that the loss had been occasioned by this misplaced confidence in a clerk too young or too inexperienced to guard against the arts of the person who had obtained the papers. This is the only point there was in the case; but

Parsons, C. J., in the course of his reasoning, declares that the wrong perpetrated by the party did not constitute the offense of forgery. So, Judge Ryland, in Tumelty v. The Bank, *supra*, says that the evidence in that case did not warrant the court in declaring that the indorsements were forgeries. On the other hand, where two parties made a note, and one of them, before he delivered it to the payee, altered it so as to make it call for a larger sum, the court in New Hampshire declared the alteration a forgery. (Goodman v. Eastman, 4 N. H. 455 ; see also Hall v. Fuller, 5 B. & C. 750.)

The above cases were decided upon principles not necessarily calling in question their criminal aspect. Because the law, on principles of policy, will protect a third person who has dealt with an agent who has committed a wrong, it does not follow as an inevitable conclusion that the wrong-doer is to go unpunished.

The statute of this State declares that " every person who, with intent to injure or defraud, shall falsely make, alter, forge or counterfeit any instrument or writing, being or purporting to be the act of another, by which any pecuniary demand or obligation shall be or purport to be transferred, created, increased, charged or diminished, or by which any rights or property whatsoever shall be or purport to be transferred, conveyed, discharged, increased, or in any manner affected, the falsely making, altering, forging or counterfeiting of which is not hereinbefore declared to be a forgery in some other degree, shall, on conviction, be adjudged guilty of forgery in the third degree." (1 Wagn. Stat. 470, § 16.) This statute makes the crime of forgery more comprehensive than it existed at common law.

In Regina v. Collins, 2 Moody & R. 461, it is decided that it is not forgery fraudulently to induce a person to execute an instrument on a misrepresentation of its contents. The same doctrine is repeated in Regina v. Chadwick, 2 Moody & R. 545. Where a person wrote a promissory note for $141.26, and fraudulently read it to another, who was unable to read, as a note for $41.26, and procured him to sign it as a maker, and it was held that it was not forgery. (Commonwealth v. Sankey, 22 Penn. St. 390.) But in Regina v. Bateman, 1 Coxe C. C., the pre-

cise question arising in this case was presented, and it was there held that where a party receives a blank check signed, with directions to fill in a certain amount, and to appropriate the instrument to a certain purpose, and he fraudulently fills in a different amount and devotes the check to other purposes, he commits forgery. Mr. Justice Erle said: "If a check is given to a person with a certain authority, the agent is confined strictly within the limits of that authority, and if he choose to alter it, the crime of forgery is committed. If the blank check was delivered to him with a limited authority to complete it, and he filled it up with an amount different from the one he was directed to insert; and if, after the authority was at an end, he filled it up with any amount whatsoever, that, too, would be clearly forgery." And Mr. Justice Patterson said: "I quite agree with my learned brother, that if the prisoner filled up the check with a different amount and for different purposes than those which his authority warranted, the crime of forgery would be undoubtedly made out."

In Regina v. Minterhart, 7 Car. & P. 652, and 2 Brit. C. C. 486, it was held that if a person having the blank acceptance of another be authorized to write on it a bill of exchange for a limited amount, and he write on it a bill of exchange for a larger amount, with intent to defraud either the acceptor or any other person, it was forgery.

In Regina v. Wilson, 2 Car. & P. 527, it appeared that the prisoner was the clerk of John McNicoll, and that a bill for £156 9s. 9d., for which Mr. McNicoll was bound to provide, falling due on the 8th of December, Mr. McNicoll on that day signed a blank check, with the signature of John McNicoll & Co., and gave it to the prisoner, directing him to fill the check up with the correct amount due on the bill (which was to be ascertained by reference to the bill-book), and the expenses (which would amount to about 10s.), and after receiving the amount at the Liverpool Borough Bank, to pay it over to a Mr. Williamson, in order that the bill might be taken up. Instead of doing so, the prisoner filled up the check with the amount of £250, which sum he immediately received at the bank, and without paying any part of the money over to Mr. Williamson,

retained the whole of it in his own possession, in satisfaction of a claim for salary which he alleged to be due to him.   On the day after the receipt of the money on the check he sent in an account of his claim, giving his master credit for the sum received on his check.   On these facts, Cottman, J., in summing up, told the jury that if they were satisfied that the prisoner was authorized only to fill up the check for the amount of the bill and expenses, and to pay the proceeds to Williamson, and that he filled it up for a larger sum and applied the money when received to his own purposes, that was evidence for their consideration of an intention to defraud Mr. McNicoll, as alleged in the indictment.   The jury found the defendant guilty of forgery.   The case was afterward considered by the fifteen judges, who unanimously held the conviction right.

In the cases of Regina v. Collins and Regina v. Chadwick, and Commonwealth v. Sankey, the signers of the instruments had not put them in circulation, and by ordinary caution had the power to prevent imposition.   But in the present case the check was signed with specific instructions, and the defendant, in filling up, clearly made a false instrument.   I am of the opinion that, under the statute and according to the authority of the adjudged cases, the defendant was rightfully convicted of forgery.

Judgment affirmed.   The other judges concur.