## THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* WILLIAM F. DICKIE, APPELLANT.

*Forgery — the unauthorized filling out by the cashier of a firm of a blank check — evidence of the intent — evidence of a shortage generally in the accounts of the cashier — remarks of the court to the accused, when a witness.*

Upon the trial of an indictment for forgery it appeared that the defendant was the cashier of a firm; that for several years he had been continuously intrusted with twelve checks, payable to his order, signed by the firm, but left blank as to date and amount. His authority in regard to these checks was that he might use them only to pay the bills or drafts of certain persons and transportation companies, the payments to them from time to time varying in amount. When he used one of these checks it was replaced by the firm by a new one in the same form. He had no authority to use them for current expenses of the firm, or in any manner except as stated.

He filled out one of the checks by adding the word "currency," so that it was payable to "W. F. Dickie, currency or order;" inserted the amount of two hundred and twenty-five dollars; indorsed the check in blank; obtained the money upon it; did not enter the cash in the check-book, and fled almost immediately.

*Held*, that the crime of forgery was committed.

That as the defendant had but a special limited authority to use the checks to pay certain persons and corporations, when he exceeded that authority he was guilty of forgery.

That the forgery consisted in his inserting the words "two hundred and twenty-five dollars" in a check which was not thus filled in with the intention of using it for the payment of one of the specified creditors.

That the insertion of the word "currency;" the blank indorsement; the drawing of the money; his failure to enter the transaction and his flight, were evidence of an intent to defraud.

That it was error to allow one of the firm to testify that there was a shortage in the defendant's accounts generally of a certain amount, no such issue being presented by the indictment.

That it was improper for the court to say to the prisoner, who had, upon cross-examination, been asked about a certain book: "You know that you kept that book; you know perfectly well what you kept it for; you know perfectly well what it represents, probably not absolutely and definitely; you could give us such information if you meant to, there is no doubt in my mind."

APPEAL by the defendant William F. Dickie from a judgment of conviction, rendered in the Court of General Sessions of the city and county of New York on the 18th day of July, 1890, adjudging him to be guilty of the crime of forgery in the second degree, upon which conviction he was sentenced to imprisonment in the State prison for the term of nine years and six months.

*H. B. Closson*, for the appellant.

*David Welch*, for the respondent.

BARRETT, J.:

The defendant was convicted of the crime of forgery in the second degree. The gist of the offense was the unauthorized filling in of a blank check intrusted to him by his employers. The material facts, as testified to by the complainant, Oscar M. Crego, were these:

Dickie was the cashier of the firm of Russell, Crego & Son. As such cashier he had been for two or three years intrusted with twelve checks, signed by the firm and payable to his own order, but undated and blank as to amount. When one or more of these checks was used its place was supplied, so that Dickie always had twelve such checks on hand for immediate use. These twelve checks were detached from the check-book, and were kept by Dickie in the money drawer. Dickie's authority with regard to the use of these checks was peculiar. He was authorized always to pay the drafts of an agent of the firm at Elgin, Illinois; also those of a party in Chautauqua county. He was also authorized to pay the freight bills of the different transportation companies in this city.

For these payments he was authorized to use the checks in question without any special direction from the firm. For all other payments, however, he was limited to a special direction. He was not authorized to use any of these checks for the payment of current expenses, or for the purpose of obtaining cash for current expenses, or for the payment or liquidation of any claims. When money was required for the payment of employees or other cash items, the custom was, when the money in the drawer was insufficent, for Dickie to draw a special check for the requisite amount, payable to "W. F. Dickie, currency," and bring it (still in the check-book and attached to the stub) to Mr. Crego to be signed. The custom also was, when any one of the twelve checks was used to pay drafts or other obligations of the firm, for Dickie to date such check, fill in the precise amount of the draft or other obligation, and then indorse it payable to the order of the creditor of the firm.

Upon the 28th of September, 1889, Dickie took one of these twelve checks, dated it, filled it up for $225, inserted the word "currency" after his own name, so that in place of reading "Pay to W. F. Dickie, or order," it read "Pay to W. F. Dickie, currency, or order," indorsed it in blank and obtained the money therefor at the bank.

The question is, was this a forgery of the check? The rule has long been well settled in England that an unauthorized filling up of blanks in checks, notes, acceptances and such like instruments of a commercial character amounts to forgery. In *Rex* v. *Hart* (7 Car. & P., 652) the prisoner was given an acceptance, blank as to amount, with authority to fill it in for £200. He filled it in for £500. This was held to be forgery, and upon the point being reserved the conviction was sustained by all the English judges. In *Regina* v. *Bateman* (1 Cox C. C., 186) it was said that where a check is given with a certain limited authority, the agent is confined strictly within the limits of that authority, and that if he fills in the check with a different amount from that authorized, or if, after the authority is at an end, he fills it with any amount whatever, it is clearly forgery. The doctrine of *Rex* v. *Hart* was followed in *Regina* v. *Wilson* (2 Car. & K., 527). There the prisoner was authorized to fill in the amount due on a bill for £150 and interest, then to get the check cashed and pay the bill. Instead of doing this, he filled in £250

and retained part of the proceeds, claiming that it was due him for salary. This was held to be forgery. Where the authority is general, a different rule prevails. Thus, in *Regina* v. *Richardson* (2 Foster & Fin., 343), the clerk had authority to draw checks upon his employer's bank, not only to the order of the creditors of the firm, but to his own order, for such sums as he deemed necessary to pay the cash disbursements of the business. Upon one occasion he drew a check to his own order for £11.10, the proceeds of which he appropriated. He was acquitted of forgery and put on trial for embezzlement, and the court held that the prisoner "could not be convicted of forgery, inasmuch as having a general authority to draw, he did not necessarily exceed his authority when he drew the check; and that the criminal act, if any, was the subsequent appropriation of it." In that case, however, the distinction is observed, in the statement of facts, that the clerk was not bound always to draw the checks in favor of a particular creditor, but had authority to draw generally and pay the creditor with cash. In the case at bar the jury were authorized to credit Mr. Crego's testimony and to find thereon that Dickie had no authority to draw generally and to pay the creditor with the proceeds of the check so drawn, but that his authority was strictly limited to drawing in favor of each particular creditor or for his particular bill. That is, to pay each creditor only by check and to fill in such check only the amount of such creditor's bill. There was in reality no general authority. It is true the special authority was not limited to one creditor or to one specified amount. But there is no distinction in the principle upon which deviations from specific authority are held to be forgeries. The special authority here extended over several subjects, but each subject stood by itself, and the limitation as to each was clear and well defined. There was no authority, either general or special, which authorized Dickie, for any purpose whatever, to fill in any one of these twelve checks with a single dollar except to pay the draft or bill of some one of the specified persons or corporations; none, certainly, to fill in a single dollar for his own purposes.

In the very able brief which Mr. Closson submits in behalf of the defendant he makes this claim: "It is not necessary to argue that forgery can only be committed with a pen or some similar instrument, and that, unless the prosecution can point to some writing on

this check and say that that particular writing, in some way, added to or altered the legal effect of the check, and that the words or figures, so written, were words or figures Dickie's pen had no right to put there, Dickie did not forge the check, whatever he did with the proceeds."

We agree with this view of the case, but we think the prosecution had a right to go to the jury upon the proposition that the words, "two hundred and twenty-five dollars," were words which Dickie's pen had no right to put in this particular check. There was no draft or bill before before him for that amount at the time he inserted those words. Their insertion was wholly outside of the authority conferred. Even if a draft from the Illinois agent for $200 had been before him, his authority was limited to that specific sum, and if he had inserted $225, with a view to misappropriating the surplus, he would have been guilty of forgery. Is he any the less guilty if he inserts the $225 without any bill being before him and appropriates the whole amount? There was no general authority as to amount any more than there was as to individuals. The amount was limited to the face of each draft or bill presented, neither more nor less. And the general authority to 'pay drafts or bills of these particular persons was limited to payment in one particular way, and in that only, namely, by filling in one of the twelve checks the exact amount called for and delivering such check properly indorsed to the creditor. Thus the authority conferred was the same in substance as a special authority to pay each of several persons a varying but liquidated amount, and to so pay it in a manner involving a purely clerical act. To fill in one of these checks, therefore, without regard either to the individuals covered by the authority or the amount of their claims — in other words, to fill in an arbitrary sum having no relation whatever to the authority conferred — was forgery if done " with intent to defraud ; " and the insertion of the word " currency," the blank indorsement and the drawing of the money at the bank were evidences of such intent to defraud.

The principle of the English cases seems to have been generally followed in this country. (Whart. Cr. Law [8th ed.], §§ 671, 672 ; *People* v. *Graham*, 6 Park. Cr., 135 ; *Wilson* v. *Commissioners*, 70 Ill., 46 ; *State* v. *Maxwell*, 47 Iowa, 454 ; *Biles* v. *Com.*, 32 Pa. St., 529 ; *State* v. *Kroeger*, 47 Mo., 552 ; *State* v. *Flanders*, 38

N. H., 324.) The only cases where a doubt is expressed as to the rule are *Putnam* v. *Sullivan* (8 Mass., 45), and *Van Duzer* v. *Howe* (21 N. Y., 531). These, however, were civil actions upon paper which was fraudulently used, or in which the blank amount was fraudulently increased beyond the sum authorized. They were properly decided upon the estoppel principle, and the doubts which were expressed upon the point in question proceeded upon the mistaken idea that, if the paper was forged in the sense of the criminal law, it would be illogical, in a civil action, to hold the persons who signed it. But there is nothing incongruous between a definition of forgery, upon which the guilty agent may be punished criminally, and a civil rule that, notwithstanding the forgery, one who signed the paper in blank, intrusted it to such guilty agent and conferred upon the latter the power of defrauding the innocent, shall suffer rather than the victim. We think, therefore, that the appellant's main proposition is untenable, and if the case stood upon that alone, we should feel constrained to affirm the judgment.

But we think there was error prejudicial to the defendant in permitting Mr. Crego, upon his evidence in chief, to testify to the discovery of shortage in Dickie's account generally to the amount of about two thousand seven hundred and seventy-five dollars. This was doubtless admitted upon the question of fraudulent intent, but it had no just bearing upon that question. It simply tended to show that Dickie was a faithless cashier, and that for an indefinite period he had been robbing his employers. But under this indictment the fraudulent intent was confined to the particular forgery charged, and that depended not at all upon Dickie's past misconduct in other matters, but largely upon the purpose with which he obtained the $225 in question. The methods resorted to by Dickie to procure these $225, the insertion of the word " currency " in the check; the fact that no entry of it appeared in the check-book or in the cash-book, that it was not used in whole or in part for the business; that it was not accounted for in the cash entries of the day when the money was obtained, and his flight almost immediately after the transaction, were all admissible upon the question of intent. But past larcenies by means of false entries or fraudulent misappropriation of other moneys intrusted to his keeping were surely not admissible. The proof was not even of offenses of the same nature

committed at the same time, tending to show a general purpose to misappropriate the employer's moneys by similar means. Indeed, this particular check seems to have been the only one which Dickie used contrary to his instruction. For the following question was put to Mr. Orego and the following answer given :

" Q. The question of the juror is, taking the check-book and adding together all the checks and comparing them with the vouchers, including those that have not been returned, how does your bank account stand? A. There was a difference of this check of $225, and that only."

Other points are made by the appellant which we need not consider. But as the case will probably be tried again we ought to say that the observation made by the learned judge to the defendant, with regard to a certain book, was one which was likely to affect the minds of the jury. The observation was as follows :

" You know that you kept that book ; you know perfectly well what you kept it for ; you know perfectly well what it represents, probably not absolutely and definitely ; you could give such information if you meant to, there is no doubt in my mind."

This was, in effect, a judicial expression against the candor of the defendant, which in a balanced case might turn the scale against him. Standing alone, and in view of all the facts in this case, we do not think it would be sufficient to justify the granting of a new trial, but it would certainly have been better had the observation been turned into a question and the defendant asked why, if he kept the book and was necessarily familar with its contents, he could not give the information called for.

Upon the point secondly considered, however, the conviction and judgment should be reversed, and a new trial granted.

ANDREWS, J., concurred.

VAN BRUNT, P. J. :

It seems to me, from an examination of this record, that the defendant was convicted really because of a larceny, although indicted for forgery, and as there must be a new trial, it may not be without profit to consider one point in the case. I think that the defendant's story that he had authority to fill out the check in question, and that it is not true that the only authority to fill out these checks

was to pay the bills of two consignees and those of transportation companies, is very strongly supported by the fact that the check for $100 has never appeared, and does not appear to have ever been used, and that the check for $225 in question was really filled out for the purposes testified to by the defendant. The complainant admits that the necessary disbursements paid by the defendant on that day were greater than the amount of the $100 check, and the only money that he had to pay them with, so far as appears by the evidence, was the proceeds of the $225 check. It is true it is stated that the defendant had access to the money drawer, but there is no evidence that on this day it contained one cent of money. It is not by any means a clear case, and the story of the complainant is, to say the least, in some of its aspects, somewhat extraordinary. I concur in result.

Conviction and judgment reversed, and new trial granted.