(98 App. Div. 461)

### PEOPLE v. GAFFEY.

(Supreme Court, Appellate Division, Fourth Department. November 23, 1904.)

1. CRIMINAL LAW—FORGERY—OTHER OFFENSES—EVIDENCE.
   Defendant was indicted for procuring the forgery of a note in the name of a customer of defendant's employer. It was proved that defendant had charge of his employer's accounts, and induced the bookkeeper, who was under his supervision, to make the note, which defendant caused to be discounted by a bank for his employer's benefit. It was shown that defendant received about $12 per week, from which he supported a family of four. *Held*, that defendant's passbooks in certain savings institutions, showing average daily deposits of $5, were inadmissible to show that defendant had probably embezzled the money from his employer, and induced the forgery to conceal such embezzlements.

2. SAME—RIGHT TO OBJECT.
   Where, in a prosecution for procuring a forgery, evidence tending to show an embezzlement was introduced over defendant's objection, he did not waive the same by thereafter attempting to explain such evidence as a witness in his own behalf.

   Spring and Williams, JJ., dissenting.

Appeal from Trial Term, Onondaga County.

Charles H. Gaffey was convicted of forgery, and he appeals. Reversed.

The defendant was indicted by a grand jury of Onondaga county at a session of a Trial Term of the Supreme Court held in and for said county in October, 1903, for the crime of forgery in the second degree. The indictment charged, in substance, that the defendant on the 18th day of July, 1903, at the city of Syracuse, N. Y., did cause and procure to be forged, and did aid and assist in forging, the name of M. H. Murray as maker to a promissory note dated that

day, for $70, payable to the order of B. W. Soper, at the Commercial Bank of said city, and that he did utter, offer, and dispose of said note, and procure the same to be discounted by said bank, with intent to defraud it. The indictment was duly remitted to the county court, and, upon the trial there had, the defendant was found guilty of the crime charged, and the judgment appealed from was entered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Theodore E. Hancock, for appellant.
William L. Barnum, Dist. Atty., for the People.

McLENNAN, P. J. The only questions presented by this appeal which require consideration are those raised by objections and exceptions taken by defendant's counsel to the admission of certain evidence by the learned trial court.

The defendant at the time of the alleged forgery was, and for several years prior thereto had been, in the employ of one B. W. Soper, who conducted a retail grocery store in the city of Syracuse, N. Y. The defendant occupied the position of financial man, had supervision of the books, made collections from customers, made deposits in the bank, and had charge of the bank account, and generally of the finances of the business. For the services so rendered, the defendant received from $10 to $12 per week. The evidence introduced by the people tended to show that one Michael H. Murray was a customer of Soper, and indebted to him for groceries to the amount of $67; that on the said 18th day of July, 1903, the defendant procured and induced a Miss French, who was bookkeeper for Soper, to sign Murray's name to the note in question, simulating his signature; that the note was indorsed by Soper; that the defendant then took it to the Commercial Bank, and procured it to be discounted, and the proceeds placed to Soper's credit in his account with the bank. Concededly, the name upon the note, "M. H. Murray," was not the genuine signature of Murray, and was not authorized by him, but was a forgery. It appeared without objection that there was a large number of notes, aggregating about $1,700, purporting to have been signed by other parties, made at about the same time, in the same manner, and all were procured to be discounted by the defendant, but in each instance the entire proceeds were placed to Soper's credit. So far as appears, the defendant derived no benefit from such alleged transactions. The people were permitted to introduce in evidence the defendant's account with the Syracuse Savings Bank, the Onondaga County Savings Bank, and the Trust & Deposit Company of Onondaga, contained in the passbooks issued to the defendant by said banks, respectively, covering the period from September, 18, 1899, to and including the 24th day of August, 1903, and which showed the deposits made by the defendant, which averaged about three a week, of $5 each, at least during a portion of the time. This evidence and all of it was objected to by defendant's counsel, and an exception was duly taken to the ruling of the court admitting the same. It is not contended that the avails of the note in question, or of any of the notes of similar character, were included in the money so deposited by the defendant. Nor is there any evidence to indicate that

the money so deposited was not the money of the defendant, and obtained by him in a perfectly legitimate manner. There is no item of evidence from which the inference could be drawn that the defendant was not a man of property, and entirely able to make the deposits shown from his earnings or other sources of revenue, unless such inference may be drawn from the fact that he was working for Soper in the capacity in which he was for the compensation of $12 per week. Whether during the time he was receiving money from his wife, relatives, or friends, or from investments made by him, in no manner appears. It is urged by the district attorney that the evidence was competent for the purpose of showing a motive for the commission of the crime by the defendant; the argument being that as the defendant was working for $12 per week, and had a family to support, he could not have obtained the amount of money necessary to enable him to make the deposits indicated honestly; that he had the opportunity to take such moneys from his employer; that he did so; and that he forged the note in question, and the others referred to, for the purpose of keeping his employer's account good, so that his stealings or embezzlement would not be detected. That such was the purpose of the evidence is frankly · admitted by the district attorney. In his brief he says:

"The evidence was introduced for the sole purpose of doing appellant harm, and we believe that the jury were somewhat influenced by this evidence to find their just verdict in this case; and it is respectfully submitted that a careful consideration of this evidence, taken in connection with the other proven and admitted facts in the case to which attention will be called, would lead any reasoning man of good common sense to the same conclusion. It is claimed by the respondent that this evidence was clearly competent, as bearing upon the question of motive."

And again the counsel says:

"It is claimed here, as at the trial, by the respondent, that the forging and uttering of these notes, among which is the one in question, was done for the purpose of concealing and covering up his stealings from his employer. He was a trusted employé; the manager of the books and collections for Mr. Soper for fifteen years; the collector, whose duties, as he himself says, were to collect from the customers, and himself give them credit each day for the amounts they had paid—and therefore had abundant opportunity to embezzle his employer's money which he had collected."

Again he states:

"The salary of the appellant had never been above $12 per week, and sometimes down to $10. He had a family of four to support, and, as far as appears from the evidence, had no other source of income except his salary since sixteen years ago, when he won some money on election bets and in a lottery. * * * Thus we are left with the proposition that a man with a salary of $12 per week, and having four people to support out of that, was able to, and did, deposit $5 to $6 almost daily, or about that daily average, exclusive of the larger deposits. This, on the face of it, could obviously only have been done by this collector embezzling from his employer some of the money which he had collected. Here was his financial interest—his motive for the forging and uttering of these notes. And it is for this reason that the evidence is competent, bearing so clearly as it does upon the question of motive."

In other words, broadly stated, evidence was permitted to be introduced for the purpose of proving that the defendant was guilty of embezzlement, to the end that the jury might be asked to infer that defendant's motive in forging the note in question was to enable him to

prevent the discovery of such embezzlement. We think the evidence incompetent for the purpose or for any purpose. The defendant was on trial, charged with having procured a certain note to be forged. Upon the trial of that charge it was not competent to prove that three years before, or during a period of three years, he had embezzled money from his employer, and that he was guilty of that crime. There is no connection between the two. The acts by which one was consummated in no manner relate to the acts by which the other was perpetrated. They did not even occur at or about the same time, and were entirely different in their character.

In the case of People v. Dickie, 62 Hun, 400, 17 N. Y. Supp. 51, the defendant was upon trial for forgery, for having, without authority, filled in the blanks in certain checks intrusted to him by his employers, and·in that case proof was admitted which tended to show that the defendant had been guilty of embezzlement. The court said:

"But we think there was error prejudicial to the defendant in permitting Mr. Crego, upon his evidence in chief, to testify to the discovery of shortage in Dickie's account generally to the amount of about $2,775. This was doubtless admitted on the question of fraudulent intent, but it had no just bearing upon that question. It simply tended to show that Dickie was a faithless cashier, and that for an indefinite period he had been robbing his employers. But under this indictment the fraudulent intent was confined to the particular forgery charged, and that depended not at all upon Dickie's past misconduct in other matters, but largely upon the purpose with which he obtained the $225 in question. * * * But past larcenies by means of false entries or fraudulent misappropriation of other moneys intrusted to his keeping were surely not admissible. The proof was not even of offenses of the same nature committed at the same time, tending to show a general purpose to misappropriate the employer's moneys by similar means."

The language of the court is particularly applicable to the facts of the case at bar. As we have seen, there was no connection between the embezzlement of Soper's money by the defendant and the forgery charge upon which he was being tried. "It is an elementary principle of law that the commission of one crime is not admissible in evidence to establish the guilt of a party of another. But if the evidence is material and relevant to the issue, it is not inadmissible simply because it tends to prove the defendant guilty of another crime." People v. McLaughlin, 150 N. Y. 365, 44 N. E. 1017.

It is hardly necessary to say that the evidence being considered was harmful to the defendant. The fact that the defendant deposited this considerable sum of money, $5 at a time, and that he was working for less than $50 per month, might very well have suggested to the jury that the money so deposited was not obtained legitimately. But it is hardly necessary to discuss the question whether or not the evidence was in fact harmful, because of the practical concession of the district attorney that it was so, and that it was so intended. At all events, the respondent has not demonstrated that the admission of the evidence was not prejudicial to the defendant. In People v. Smith, 172 N. Y. 243, 64 N. E. 824, the court said, "The burden of showing that the illegal and improper evidence which was received was harmful is not upon the appellant, but that it was harmless, and could by no possibility have prejudiced him, must be established by the respondent;" and many cases sustaining that proposition are cited by the learned court.

The defendant is in no manner precluded from insisting upon a reversal of the judgment for the admission of the illegal and incompetent evidence because of the fact that he himself went upon the stand and sought to explain it. Evidence cannot be said to be entirely harmless when the party objecting to it is obliged to call a witness to explain or contradict it. Anderson v. R., W. & O. R. Co., 54 N. Y. 342.

The conclusion is reached that the evidence adverted to was illegal and incompetent; that its admission was prejudicial to the defendant; and for that reason that the judgment and order appealed from must be reversed. Having reached the conclusion indicated, it is unnecessary to consider any of the other questions presented by the exceptions.

Judgment and order reversed, and new trial ordered upon questions of law only; the facts having been examined and no error found therein.

HISCOCK and STOVER, JJ., concur. SPRING and WILLIAMS, JJ., dissent.