## HICKS *v.* THE STATE.

No. 9386. MARCH 17, 1933.

*George G. Finch* and *James Aaron Aldred,* for plaintiff in error. *John A. Boykin, solicitor-general, J. W. LeCraw,* and *John H. Hudson,* contra.

HILL, J. The question propounded by the Court of Appeals must be answered in the affirmative, upon the following authorities: Penal Code (1910) § 231 is as follows: "Whoever, with intent to defraud the State or any person, shall falsely and fraudulently make, forge, alter, or counterfeit, or cause or procure to be falsely and fraudulently made, forged, altered, or counterfeited, or willingly aid or assist in falsely and fraudulently making, forging, altering, or counterfeiting, any . . writing obligatory, bill of exchange, promissory note, order for money or other thing of value, or any indorsement or assignment of said papers, shall be punished by imprisonment and labor in the penitentiary for not less than four years nor longer than ten years." In *Roberts* v. *State*, 92 *Ga.* 451 (2) (17 S. E. 262), it was held: "On the trial of an indictment for the forgery of a railroad pass, there was no error in charging: 'If any one should happen to sign or write his name on a piece of paper, and some one should get hold of it and fraudulently write above it a promissory note, it would be a forgery in the letter and spirit of the law,' the charge being correct law, and not improperly used as an illustration in the course of the court's instructions to the jury." The report in 92 *Ga.* does not give any statement of facts, but from the original record of file in the clerk's office it appears that the indictment charged that Roberts "did falsely and fraudulently make, forge, and counterfeit a certain pass from Monroe to Atlanta over the Seaboard Air Line—Georgia, Carolina & Northern Division—said pass purporting to be issued to M. B. Frank and wife by John H. Winder, superintendent; but said pass was falsely and fraudulently made and forged by said S. P. Roberts, and sold to said M. B. Frank and wife, with intent to defraud the Georgia, Carolina & Northern Division of the Seaboard Air-Line." The evidence in that case tended to show that the pass as to which the forgery was charged was one of a series of passes contained in a pass-book furnished by the railroad company to one of its heads of departments, to be issued by him, when he saw proper, to employees of the road; that defendant was not an employee; that this book of passes disappeared, or was stolen, from the possession of the head of the department mentioned, under circumstances indicating that it might have been taken by the defendant; that the passes of which the forgery was charged came from this book, as well as two other passes taken up by a conductor under an order which had been

issued after the book of passes was missed, directing that all such passes be taken up when presented; and that the book was found in the possession or control of defendant. The passes in question were what was called "blank passes;" that is, they were signed by a stamp in the name of the superintendent of the railroad, to be filled in by persons authorized to do so. Upon this evidence the defendant was convicted, and on bringing his case to the Supreme Court the judgment of the lower court was affirmed. This court held that the lower court did not err in using the illustration of a person filling in a promissory note above another person's signature without authority. That case is analogous to the present; and if it is a forgery to fill in a railroad pass that an official of the railroad company has signed, with intent to defraud and without any authority to fill it in, then it seems to us that it is a forgery, where a person signs a promissory note with a blank space left in it, for another person, without any authority to do so, to fill that blank space with words and figures increasing the amount stated on the margin of the note. In the *Roberts* case the defendant was charged with forging the railroad pass; and this court held that proof of filling in the blank pass with the names of persons, with intent to defraud the railroad company, was sufficient to convict the defendant.

In 2 Wharton's Criminal Law, 1102, § 876, it is said: "Forgery to fill in terms other than those authorized. . . When an agent has authority to fill with a particular sum a blank in a paper signed by his principal, it is forgery to fill the blank with a larger sum. This has been held to be the law even in cases where the writer believed that the larger sum was due him. And an unauthorized filling of blanks falls generally under the same rule." In support of the text Wharton cites *Roberts* v. *State,* supra, and the following cases from other jurisdictions: Wilson v. South Park Comrs., 70 Ill. 46; State v. Maxwell, 47 Iowa, 454; People v. Dickie, 62 Hun, 400 (17 N. Y. Supp. 51); Hooper v. State, 30 Tex. App. 412 (28 Am. St. R. 926, 17 S. W. 1066); Becker v. State (Tex. App.), 18 S. W. 550; State v. Kroeger, 47 Mo. 552; State v. Taylor, 117 Mo. 181 (22 S. W. 1103); State v. Flanders, 38 N. H. 324; Comm. v. Pioso, 18 Lanc. L. Rev. 27. In People v. Dickie, supra, is an interesting discussion of the principle here involved. In that case it was held that an employee entrusted by his employers with checks drawn to his order, and signed by them in blank, with authority to fill

them in only to pay the drafts or bills of certain specified persons as presented, by indorsing them over, who, with intent to defraud, filled in one of such checks with an arbitrary amount, and, indorsing the same in blank, obtained money thereon, was guilty of forgery. It was said: "The question is, was this a forgery of the check? The rule has long been well settled in England that an unauthorized filling up of blanks in checks, notes, acceptances, and such like instruments of a commercial character, amounts to forgery. . . The principle of the English cases seems to have been generally followed in this country." In Caulkins v. Whisler, 29 Iowa, 495 (4 Am. R. 236), it was held that where a person writes his name on a piece of blank paper, to be used for the purpose of identifying his signature, and the person to whom it is given, without the knowledge of the other, writes over the signature a promissory note which before maturity is negotiated to an innocent holder, the instrument is a forgery; and that the holder is not entitled to recover thereon. In Williams v. State, 213 Ala. 1, 104 So. 40, it was held, that, to constitute forgery, there must be a false making, which may be accomplished by a fraudulent application of a false signature to a true instrument, or a real signature to a false instrument; that the essence of forgery is an intent to injure or defraud; and that it is of no consequence whether the counterfeited instrument be such as, if real, would be effectual to the purpose it intends, so long as there is a sufficient resemblance to impose on those to whom it is uttered. In 26 C. J. 898, § 6, it is said: "Writing over genuine signature. Where a person procures the signature of another upon a blank paper, and, without authority from the latter, writes a promissory note or other apparently valid instrument above it, he is guilty of forgery. And the rule is the same where an agent, having the genuine signature of his principal with instructions to write an instrument in a certain way, disobeys his instructions, or fills up the instrument after his authority is at an end." See 12 R. C. L. 146, § 10.

The decision in *Jackson* v. *State, 72 Ga.* 28, is not controlling. There the controlling point was that there was no change made in the body of the order itself. Here the offense is in writing "three hundred fifty 00/100" in the body of the note without any authority to do so. *All the Justices concur.*