QUICK SERVICE BOX CO., Inc., v. ST. PAUL MERCURY INDEMNITY CO. OF ST. PAUL.

No. 6258.

Circuit Court of Appeals, Seventh Circuit.
Feb. 16, 1938.

Albert K. Stebbins, G. Kenneth Crowell, and Kenneth Grubb, all of Milwaukee, Wis., for appellant.

August C. Moeller and Emmet Horan, Jr., both of Milwaukee, Wis., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Defendant appeals from a judgment of the District Court awarded as recovery upon a blanket forgery bond covering all of plaintiff's employees at its various places of business in the United States.

The bond indemnifies plaintiff against loss through the payment by any depositing bank of any check drawn by or purporting to be drawn by plaintiff at any of its offices upon which the "signature of the insured" or "the signature of any endorser" "shall have been forged" or which "shall have been raised or altered in any other respect."

The stipulated facts show that one Tawes was employed by plaintiff as office manager and bookkeeper. He was not authorized to sign checks unless they were complete on their face, signed by either Gates or Blum, both vice-presidents, drawn on certain specified banks and issued for the purchase of merchandise used in the operation of the business and ordinary operating expenses, including salesmen's commissions and pay rolls. He had no authority to draw checks payable to "cash"

in an amount exceeding $50 or for "additional amounts for expenses of officers or employees." He was not authorized to draw checks for the amounts and purposes of those involved in this litigation.

During his employment, and while the bond was in force, Tawes presented blank checks to one of the two vice-presidents and obtained the signature of one of them to each of the checks. He then filled in the dates, numbers, and amounts and wrote on the face the word "cash" as payee, all without authority. He then countersigned each check below the signature of the company and that of its vice-president and wrote his own name on the back as endorser, presented the check to the bank for payment, received the proceeds and appropriated them to his own use. The checks were marked "paid" and thereafter returned by the bank to the plaintiff at New York as canceled vouchers, where they again came into the possession of Tawes as office manager. On some of them he then wrote over the word "cash" the names of various purported payees, erased his own name appearing on the back, and substituted, as endorsers, the names of various purported payees, banks and the New York Clearing House. On others he did not erase his endorsement, alter the word "cash," or substitute the names of other purported endorsers. All these acts were committed with intent to defraud plaintiff. Through these means, he misappropriated $24,385.

Defendant contends that the acts of Tawes were not within the provisions of the bond, in that there was no forging of the signature of plaintiff or of any endorser within the meaning of the instrument.

The District Court concluded that the signature of plaintiff appearing on the face of each check was fraudulently and illegally executed and forged within the meaning of the bond, and plaintiff insists that the undisputed evidence justifies this conclusion.

■ The bond, having been prepared by the defendant, should be construed in favor of the insured. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977. It covers the forgery of the signature of plaintiff upon any check drawn upon and paid by the latter's depositing bank. Each check bore the printed name of the insured as drawer. This printed signature, however, was not legally effective as a signature until and unless signed by a vice-president and by the office manager Tawes. The latter had no authority to draw checks in blank and no authority to draw checks under the circumstances and for the amounts of those here in evidence. Consequently every act of Tawes from the time he presented the blank check to the vice-president for signature until he cashed and received the proceeds was unlawful, unauthorized and done with intent to defraud. So far as his authority was concerned, the effective completion of the signature of the drawer depended upon his signature thereto. Had the name of the company not been printed but written by him and had he then had attached the signature of the vice-president and that of himself, a contention that forgery had not occurred would fail. It seems apparent that the result is the same whether the signature of the company was printed or written by himself. It came in to effective existence as a purported signature of the company only when he signed his name, and when he wrongfully did so he gave apparent probity to a fraudulent signature. It was his intent, as Judge Geiger commented, to procure payment of the checks, without the "good faith signature" of the plaintiff and its officers, but rather by means of a fraudulent signature completed by himself. Each signature of the company thus completed and made effective was a forgery of the signature of the employer within the provisions of the bond.

■ We understand forgery to include the making or altering, with intent to defraud, of any writing or printing so as to cause the alteration or execution purport to be the valid act of a person, which it is not. Within its terms are the fraudulent making of words purporting to be what they are not to the prejudice of others' rights—the publication of a false document to the prejudice of others; the false making or material alteration, with intent to defraud, of any writing which, if genuine, would be of legal efficacy or the foundation of legal liability. 12 R.C.L. 139; Wharton on Criminal Law, 12th Ed., 1163; Davis v. State of Georgia, 25 Ga.App. 532, 103 S.E. 819; State v. Hearn, 115 Ohio St. 340, 154 N.E. 244. In Williams v. State, 213 Ala. 1, 104 So. 40, the court held that to constitute forgery there must be a false making; that this might be accomplished by the fraudulent application of a false signature to a true in-

strument or a real signature to a false instrument; and that the essence of forgery is an intent to injure or defraud at the time the action complained of is done. And this court in Re Count de Toulouse Lautrec, 7 Cir., 102 F. 878, adopted the definition of forgery enunciated by Bishop as the fraudulent making of a false writing which if genuine would be apparently of legal efficacy.

■ Nor does the fact that when Tawes made effective or published the signature of his employer he signed his own name negative the idea of forgery, for, if the signature is false in any material part and calculated to induce another to give credit to it as genuine, it is truly forgery. 12 R.C.L. 144. See, also, Ex Parte Hibbs, D.C., 26 F. 421; People v. Dickie, 62 Hun 400, 17 N.Y.S. 51; State v. Kroeger, 47 Mo. 552, 561; Merchants' Bank & Trust Co. v. People's Bank of Keyser, 99 W.Va. 544, 130 S.E. 142, 148; Yeager v. United States, 59 App.D.C. 11, 32 F.2d 402.

■ Then, too, though one may under certain conditions have authority to sign certain names, yet, if he sign such to a false document or to an unauthorized one, it is forgery. Such was the conclusion of the court in Ex Parte Hibbs, D.C., 26 F. 421. The court commented that it must be borne in mind that forgery is not necessarily confined to the false writing of another's name. It may be committed in other ways. The essence of forgery does not so much consist in counterfeiting as in endeavoring to give appearance of truth to a mere deceit and falsity; and either to impose that upon the world as the solemn act of another which it is not or to make a man's own act appear to have been done at a time when it was not performed and by force of such falsity to give it an operation which in truth and justice it ought not to have. In other words, if the deceit consists in making it appear that a man's own act was done under circumstances which would make it valid and genuine, when in fact it was false and unauthorized, the result is the same. People v. Dickie, 62 Hun 400, 17 N.Y.S. 51; State v. Kroeger, 47 Mo. 552, 561; State v. Sotak, 100 W.Va. 652, 131 S.E. 706, 708, 46 A.L.R. 1523; Commonwealth v. Wilson, 89 Ky. 157, 12 S.W. 264, 25 Am.St.Rep. 528. In State v. Sotak, supra, the court commented that "there is an abundance of authority that an agent may commit forgery by

making or signing an instrument in disobedience of his instructions or in the improper exercise of his authority." Our conclusions are in accord with the statutory provisions of New York defining forgery. Penal Law N.Y., Consol.Laws, c. 40, §§ 880, 884, 887, 889; Cahill's N.Y. Statutes, chap. 41.880; 41.884; 41.887, and 41.889.

■ We agree with the District Court that the effectuation of the signature of the drawer by utilization of its printed signature and the addition of the unauthorized signature of the employee with an intent to defraud was a publication of a false signature and constituted a forgery of the signature of the insured within the terms and provisions of the bond.

The judgment is affirmed.