# CHARLESTON.

STATE v. M. H. SOTAK, *alias* M. H. HILL.

(No. 5527)

Submitted January 19, 1926.   Decided January 26, 1926.

1. FORGERY—PARTNERSHIP—*Member of Trading Partnership, Signing Partnership Name to Check on Partnership Funds, Not Guilty of "Forgery," Although he Uses Money to Prejudice of Firm (Code, c. 146 §5); Member of Trading Partnership Acts in Dual Capacity of Principal and Agent; Generally Member of Trading Partnership May Sign Partnership Name to Check on Partnership Funds.*

   Generally, a member of a trading partnership has the power and right to sign the partnership name to a check on the partnership funds in a bank, and if he does so, he is not guilty of forgery, although he uses the money thus withdrawn, to the prejudice of the firm. As a member of the partnership he acts in the dual capacity of principal and agent. (p. 656).

   (Forgery, 26 C. J. § 61 [Anno]; Partnership, 30 Cyc. pp. 478, 504.)

2. SAME—*If Partner Signs His Own and Copartner's Name to Check, Contrary to Agreement and With Criminal Intent, He is Guilty of Forgery (Code, c. 146, § 5).*

   But if a fund be deposited in the joint name of the two persons who are partners, under the express understanding and agreement that the fund shall only be used for an agreed purpose, and shall not be withdrawn from the bank's custody except upon the signature of the two, signed personally by themselves, the implied authority (which one has by reason of the relation of partner to the other to withdraw said fund) does not exist; and if one signs his own and the other's name to a check by which the fund is withdrawn, to the prejudice of the other, and with criminal intent, he is guilty of forgery. (p. 658).

   (Forgery, 26 C. J. § 61 [Anno].)

3. EVIDENCE—*Jury May Consider and Weigh Inferences Drawn from Evidence and Circumstances.*

   A jury may consider and weigh all reasonable and justifiable inferences which may be drawn from the evidence and circumstances. (p. 661).

   (Criminal Law, 16 C. J. § 2290.)

   (Note: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Marion County.

M. H. Sotak alias M. H. Hill was convicted of forgery and sentenced to serve six years in the penitentiary at Moundsville, and he brings error.

*Affirmed.*

*M. M. Neely,* for plaintiff in error.

*Howard B. Lee,* Attorney General and *J. Luther Wolfe,* Assistant Attorney General, for the State.

LIVELY, JUDGE:

Plaintiff in error, hereinafter called defendant, was convicted of forging a check for $3,000 on the First National Bank of Fairmont, dated March 28, 1925, by signing the name of Mike Dzula thereto jointly with his own name, the check being payable to the Black Diamond Coal Company, and by it endorsed by M. H. Hill (defendant) and to the credit of which company the proceeds were placed. Defendant was sentenced to the penitentiary for six years, and he prosecutes error. The indictment charged him with forging and also with uttering the check, knowing it to be forged.

The prosecuting witness, Mike Dzula, is a Pole, and was a coal miner. He had accumulated savings to the amount of about $4,000 which was deposited in a savings account in the said bank. Defendant is a Russian, and his occupation or business is not stated. Sometime in the fall of 1924, defendant had borrowed $1,000 from Dzula, and a short time before March 16, 1925, again approached Dzula for the purpose of inducing him to enter into a partnership for the purpose of purchasing and operating a mine known as the Jackson Run Mine, which appeared to be controlled by Virgil Highland, at Clarksburg, and which mine defendant said he could buy. Defendant had prepared a contract bearing date March 16, 1925, and it was signed by himself and Dzula on that day before a notary public, by which they agreed to become partners in the purchase of the mine, each to have a "fifty per cent right both as in the purchase of the property as well as in the profits derived from the operation of said

property after all expenses are deducted." It was agreed that Dzula had the right to withdraw from the agreement within six months; and Sotak, alias Hill (defendant) agreed that if Dzula on the sixth month after, elected to withdraw he would pay him $4,000 and gave him a note (called a "judgment note") signed by Hill and his wife; and Dzula agreed to return the note if he elected to remain in the "partnership contemplated by this agreement". It will be observed that nothing was stipulated as to the amount of money, if any, each should contribute. The judgment note had previously been signed by the wife of Sotak, alias Hill, in Pittsburg, and was delivered to Dzula on the date of the written agreement, and is dated as of that day. On that day Dzula obtained a cashier's check for his savings, $4,000, payable to himself, which he endorsed and delivered to Sotak, who endorsed it and put it in the bank to the credit of "M. H. Hill and Mike Dzula"; a short time thereafter showing the pass book to Dzula in which it appeared that there were two deposits made that day, one of $5,000 and the other of $4,000. The assistant cashier testified, however, that there had been a deposit of $500 instead of $5,000 on that day, and that some one had added an naught to the $500 on the pass book, making it appear by the pass book that $5,000 had been deposited when only $500 in fact had been. The total amount ever deposited to the account of "M. H. Hill and Mike Dzula" was $4,500 and consisted of the two deposits above set out. Dzula says that it was agreed and understood that the money so deposited was not to be drawn out except to pay the purchase money for the mine, and then only when he and defendant had signed the check or checks against the account.

It appears that on the following day, March 16, 1925, a check was drawn against the account for $1,000, payable to the order of Black Diamond Coal Company, signed "M. H. Hill, Mike Dzula", and endorsed by Black Diamond Coal Company by M. H. Hill. This sum was credited to the Black Diamond Coal Company on that day. On March 28, 1925, another check against this account was drawn for $3,000, payable to the order of Black Diamond Coal Company and signed "M. H. Hill, Mike Dzula". This check was also en-

dorsed by Black Diamond Coal Company by M. H. Hill. It was honored and the proceeds credited to Black Diamond Coal Company. This is the check which is charged to have been forged and uttered by defendant, and is set out in haec verba in the indictment. Dzula testified that he had not signed this check nor the check for $1,000 and had not authorized any one to sign either or any check for him. The remaining amount of the account, $500, was withdrawn by a check payable to ''cash'', dated April 18, 1925, and signed as the other two were signed. Who got that sum does not appear. Dzula says he did not. The account was then closed by the bank. What connection defendant had with the Black Diamond Coal Company does not clearly appear. The bank officials say that the deposits to the credit of Black Diamond Coal Company were made by defendant.

After the state closed, having shown the facts substantially as above detailed, by the bank officials and Dzula, defendant moved to strike out the evidence and for a directed verdict in his favor. The motion was overruled, and defendant not desiring to offer evidence in defense, the case went to the jury on instructions and arguments of counsel.

The error first relied upon is that the evidence does not warrant a verdict of guilty; because (a) defendant and the prosecuting witness were partners, and one partner cannot be guilty of forging his partner's name in the conduct of the partnership; (b) that even if there was no partnership, Dzula loaned his money to defendant on security, and therefore he had a right to use it as he chose, and sign Dzula's name for that purpose; (c) that the evidence does not show that defendant signed Dzula's name to the $3,000 check, and that it does not show that defendant knew Dzula had not signed it when he uttered it. The second assignment of error is that instruction No. 1 given for the State, was erroneous and prejudicial.

There are numerous definitions of forgery. Note to Bishop's Criminal Law (9th ed.) Sec. 523; *Merchants Bank & Trust Co.* v. *Peoples Bank,* 99 W. Va. 544; 130 S. E. 142. The definition most frequently quoted is Blackstone's, which defines it as ''The fraudulent making or alteration of a writ-

ing to the prejudice of another man's right." Lord Coke says, "To forge, is metaphorically taken from the smith who beateth upon his anvil, and forgeth what fashion or shape he will; the offense is called crimen falsi, and the offender falsarious, and the Latin word 'to forge' is falsare or fabricare, and this is properly taken where the act is done in the name of another." (3 Inst. 169). To forge in law is to make or alter with intent to defraud; and our statute, Chap. 146, Sec. 5, says: "If a person forge any writing * * * to the prejudice of another's right, or utter or attempt to employ as true, such forged writing knowing it to be forged, he shall be confined in the penitentiary not less than two nor more than ten years."

Did defendant make a writing which prejudiced another's right with intent to defraud; or did he utter such writing knowing it to be forged? The check on its face purports to be the check of M. H. Hill and Mike Dzula. The latter says he did not sign that check and gave no one authority to sign it. Defendant's counsel, however, says that even if defendant did make the check and did sign Dzula's name thereto in conjunction with his own, to the prejudice of Dzula, he had power and authority to do so by virtue of the relation of partnership then existing between them, and has committed no crime, at least not forgery. Reliance is placed upon the cases of *Com.* v. *Brown,* 10 Phila. Pa. 184, 30 Leg. Int. 200; and *People* v. *Wiman,* 85 Hun (N. Y.) 320; and upon cases holding that a partner cannot be guilty of embezzlement or larceny of partnership property, because he is both principal and agent, *State* v. *Saunders,* (Ariz.) 17 A. L. R. 980; *State* v. *Mathews,* (Ind.) 28 N. E. 703, and *Manuel* v. *State,* (Tex.) 71 S. W. 973. In *Commonwealth* v. *Brown,* cited, it was held that a partner using the firm name in an instrument with intent to defraud the copartnership, was not guilty of forgery. Brown, the indicted partner, was a member of the firm of McCleary & Brown. He collected money of the firm, appropriated it to his own use, and told McCleary that he had invested it in coffee, and exhibited a bill of sale and receipt from Rinehart & Stevens from which it appeared that McCleary had purchased from them and paid for a number of

bags of coffee. The receipt was forged, and was for the purpose of defrauding the partnership. The principle on which the decision is based is, that the partnership relation makes a partner a principal in respect to the partnership property as well as an agent. He has authority derived from the partnership relation to execute writings in the partnership name. Wherever authority is given to sign the name of another to a writing there can be no forgery; and where one makes or alters an instrument in good faith with the honest *belief* in his authority to do so, he is not guilty of forgery. *State* v. *Thomas,* 29 Del. 195; *State* v. *Wooderd,* 20 Iowa 541; *People* v. *Loew,* 64 Hun (N. Y.) 639; *Rex* v. *Forbes,* (Eng.) 7 C. & P. 224. And if there be evidence of authority given to the accused to make the instrument, the court must charge the jury, if requested, that they should acquit if they entertain a reasonable doubt of · such authority. *White* v. *State,* 61 Tex. Crim. Repts. 498, 135 S. W. 562. But there is an abundance of authority that an agent may commit forgery by making or signing an instrument in disobedience of his instructions or in the improper exercise of his authority. *U. S.* v. *Hibbs,* 26 Fed. 421; *Moore* v. *Com.,* 92 Ky. 630; *People* v. *Dickie,* 62 Hun (N. Y.) 400; *Flower* v. *Shaw,* 2 C. & K. (Eng.) 703; *Mer. Bank & Tr. Co.* v. *Peoples Bank,* 99 W. Va. 544, 130 S. E. 142.

In *Com.* v. *Brown,* cited and relied upon, the character of the partnership is not shown from the report, except that it was a commercial or mercantile partnership and the power and authority of the partners in relation thereto are presumed to be those which the law implies from the relationship. In the instant case the agreement as written is very meager. It is a mere skeleton. The most that can be said of it is that Hill and Dzula agreed to become partners in the purchase of a coal mine, and each to be equally interested in the purchase, and profits derived from its operation after deducting expenses; and if Dzula elected to withdraw within six months, then $4,000 was to be paid to him by Hill, for which a note of even date was then delivered. The amount to be contributed by each is not stated. Dzula could not read or write the English language, and signed the paper after

Hill had read it to him, with Hill's explanation of what it meant. Then followed the delivery of the cashier's check from Dzula to Hill of the former's savings. Dzula says that this money was to be used only in the purchase of the mine, and the money was to be deposited to the credit of the joint account of himself and Hill and was not to be checked out unless both signed the check. He said, "He (Hill) was supposed to take that check to the bank and put it in his name and my name;" and "the money was put in my name and his name together". He says he did not authorize any one to sign his name to the $3,000 check. He testified that Hill told him, "I going to put to the bank $5,000 and my check (Dzula's) for the $4,000, for two name, Mr. Hill's name and my name;" and, "Nobody can take the money because he going to sign his name and I sign my name." The substance of his evidence, given through an interpreter in broken English, is to the effect that the money was to be deposited to their joint account, and was not to be used until the deed was made for the mine, and was not to be taken out of the bank until both signed the check. The money had never been delivered to the partnership for use by either member. Dzula was keeping it under control until it was actually used for the purchase of the mine. Admitting that there was a trading partnership, from which the implied authority to sign checks would arise, the general power to use this money inferred from the bare relation of partnership, was by express agreement limited. Defendant did not have control of it as a partner, nor as an agent. Corroborative of Dzula's testimony that the money was to be checked out only upon joint signature of the two, is the fact that afterwards in the attempt to deal with Highland for the purchase, both Hill and Dzula did sign jointly two checks, one for $500 and the other for a larger amount, which checks were never used. It looks as if defendant never intended to buy the mine, and never intended to use these legitimate checks, for, at the time of their issuance, he had already transferred the money in the bank to the account of the Black Diamond Coal Company. In *Rex* v. *Dixon,* 2 Lew. 178, the prisoner and the prosecutors were members of a trade society. The funds were put in the

bank and were not to be paid out unless all attended to receive it. The prisoner went to the bank with two other persons who impersonated the prosecutors, and drew out the money. It was held to be forgery on the part of the prisoner.

In the *Wiman case,* also relied upon, defendant was a partner in R. G. Dun & Co., a commercial agency, and he drew a check ostensibly to pay part on a debt to Bullinger, a creditor of the agency. The check was made payable to Bullinger, and defendant signed the name of the agency thereto (which he had authority to do), then endorsed Bullinger's name thereon and appropriated the proceeds to his own use. The agreement by which R. G. Dun, Wiman, King and Douglass associated themselves together as R. G. Dun & Co., was ambiguous as to whether it constituted a partnership, or whether Wiman, King and Douglass were employees of Dun. The appellate court held that the agreement made them partners. However, by the 17th article of the agreement no party thereto was to use the name of R. G. Dun & Co., except in the regular and proper business of the agency, nor was Wiman, King or Douglass to use the said mercantile name in making, signing, drawing or endorsing any note, bill of exchange, draft or other obligation or evidence of debt, excepting only endorsement of such papers for deposit or collection for the benefit of the association. Here was an inhibition upon Wiman in the agreement of partnership; but the fact developed in the trial that on numerous occasions he had been in the habit of taking money out of the firm, overdrawing his account. Dun would protest; Wiman would repent, and then immediately repeat the offense, Dun having knowledge of the repetition. Under such facts the court said it was a question of fact for the jury to determine the intent, criminal intent being necessary to conviction. The trial court in its charge to the jury had taken from the jury the question of criminal intent. The conviction was reversed on this ground, and on error in the admission and exclusion of evidence. Judge Follett dissented. Judge O'Brien concurred in the reversal, on the sole ground that the trial court had excluded from the jury the question of criminal intent. The court recognizes the doctrine that the general powers of a

partner conferred on him by law may be restricted by the partnership agreement. The powers, duties and liabilities of partners, as among themselves, depend upon and are governed by the articles of agreement.

Defendant's instruction No. 5 told the jury that a member of a partnership had implied authority to sign the firm name to checks, and that one of the members of a partnership concern cannot be guilty of forgery in using the firm name by signing it to a check. The jury evidently came to the conclusion that even if there was a trading partnership in existence, the implied authority to sign a check on this special fund had been expressly withdrawn. We are of the opinion such conclusion was justified. In the recent case of *Rex* v. *Holden,* (1912) 1 K. B. 483, a partner, who without authority and with intent to defraud, accepted a bill of exchange in the name of the firm, was held to be guilty of forgery; but that decision appears to have been based on Sec. 24 of the Forgery Act of 1861.

On the second branch (b) of the alleged insufficiency of the evidence, namely, that the money was loaned on security by Dzula to Sotak, alias Hill, as evidenced by the judgment note, we think the jury could well find that it was not a loan for a period of six months, but that the note was taken to indemnify loss to Dzula in the event that he should desire to retire from the partnership. Besides, the control which Dzula retained on the fund, and to which defendant agreed, and which he recognized by jointly checking on it in negotiations for the deed to the mine which defendant said he could purchase, does not import a loan; on the contrary, it negatives a loan.

On the next branch (c), it is strongly argued that there is no evidence that defendant forged Dzula's name to the $3,000 check, or that he uttered it knowing the name to be forged. Engle, one of the bank's officers, said there was a difference between the writing of the two names on the check. Neither Hill nor Dzula knew who signed the latter's name. It was there and the check was in possession of defendant. He endorsed the name of the payee Black Diamond Coal Company; and he is identified as the person who deposited the funds of

that company. Defendant may not have personally signed the name, some other person may have done so; but it would be unreasonable to say that defendant did not know how the name came to be there. It was a paper for the removal of a fund over which he and Dzula had joint control and was payable to a company with which defendant was closely connected. He offered no explanation, but contented himself with moving to strike out the state's evidence as insufficient, which motion is tantamount to a demurrer to the evidence. Crimes like forgery are usually committed in secret, and not openly. All justifiable inferences from the evidence may be drawn by the jury. They go to the weight which a jury may give to the evidence. *Estep* v. *Price,* 93 W. Va: 82; *State* v. *Sullivan,* 55 W. Va. 597. Under the circumstances and evidence we think the jury could well conclude beyond all reasonable doubt that defendant forged or procured the forgery of Dzula's name on the check, and that he uttered it knowing it to be a forgery. It follows, that state's instruction No. 1, which told the jury, in substance, that if they believed from the evidence beyond a reasonable doubt that defendant signed Dzula's name, or procured some other person to do so, with intent to defraud, they should find defendant guilty as charged in the first count, was not error. An inference, drawn from the connection, relation and coincidence of facts and circumstances with each other, is justifiable and reasonable when it comports with common sense enlightened by human knowledge and experience.

Perceiving no reversible error, the judgment is affirmed.

*Judgment affirmed.*