**SECURITY NATIONAL BANK OF DURAND, Plaintiff,**

.v.

**FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant.**

Civ. A. No. 718.

United States District Court
W. D. Wisconsin.

Nov. 1, 1956.

Harold E. Stafford, Chippewa Falls, Wis., for plaintiff.

George Y. King, Eau Claire, Wis., for defendant.

STONE, District Judge.

In this action plaintiff seeks to recover the sum of $10,000 from defendant, pursuant to the provisions of a "Bankers Blanket Bond", executed by defendant and delivered to plaintiff, whereby the defendant undertook and agreed to indemnify and hold harmless the plaintiff from and against any losses sustained by plaintiff by reason of the hazards therein innumerated, one of which was described in said policy as follows:

"(E) Any loss through the Insured's having, in good faith and in the course of business, whether for its own account or for the account of others, in any representative, fiduciary, agency or any other capacity, either gratuitously or otherwise, purchased or otherwise acquired, accepted or received, or sold or delivered, or given any value, extended any credit or assumed any liability, on the faith of, or otherwise acted upon any securities, documents or other written instruments which prove to have been counterfeited or forged as to the signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent or registrar, acceptor, surety or guarantor or as to the signature of any person signing in any other capacity, or raised or otherwise altered or lost or stolen, or through the Insured's having in good faith and in the course of business, guaranteed in writing or witnessed any signatures, whether for valuable consideration or not and whether or not such guaranteeing or witnessing is ultra vires, the Insured, upon any transfers, assignments, bills of sale, powers of attorney, guarantees, endorsements or other documents upon or in connection with any securities, obligations or other written instruments and which pass or purport to pass title to such securities, obligations or other written instruments; Excluding, However, any loss through Forgery or Alteration of, on or in any checks, drafts, acceptances, withdrawal orders or receipts for the withdrawal of funds or property, certificates of deposit, letters of credit, warrants, money orders or orders upon public treasuries; and excluding, further, any loss specified in subdivisions (1) and (2) of Insuring Clause (D) as printed in this bond, whether or not any amount of insurance is applicable under this bond to Insuring Clause (D).

"Mechanically reproduced facsimile signatures are treated the same as handwritten signatures."

The complaint alleges that for a long time prior to the date of the alleged forgery the plaintiff had loaned money to "Chain-O-Lakes, Inc.", a corporation, and taking as security therefor accounts receivable of "Chain-O-Lakes, Inc." which were assigned to plaintiff, and evidenced by an invoice with a written assignment on its face, signed by the corporation. That each of said invoices represented shipments of merchandise by "Chain-O-Lakes, Inc." to its customers, who were indebted to "Chain-O-Lakes, Inc." therefor. That on or about November 10, 1954, while said bond and policy of insurance was in full force and effect, the "Chain-O-Lakes, Inc." by Irving Koren, its president, assigned and delivered the invoices and assignments involved herein to plaintiff aggregating $21,476.29, upon which and in consideration thereof the plaintiff, in good faith and in the course

of business, and believing the invoices to be valid and genuine, advanced and loaned to "Chain-O-Lakes, Inc." the sum of $17,341.52. That said invoices so assigned to plaintiff were fictitious, spurious, counterfeit, and forged, in that they pretended to represent and evidence merchandise sold, shipped and delivered to the purchasers thereof, and that such purchasers were indebted to said "Chain-O-Lakes, Inc." upon such accounts for the amounts thereof; when in truth and in fact no merchandise was sold, delivered or shipped to the persons or corporations mentioned and described on said invoices, as purchasers thereof, and such invoices did not in fact represent or evidence merchandise described thereon, sold, delivered or shipped to any purchasers, and did not represent or evidence any indebtedness to "Chain-O-Lakes, Inc." whatsoever.

That by reason thereof the plaintiff suffered a financial loss of $17,341.52. That plaintiff has performed the conditions of its contract with defendant that it was required to perform and has duly furnished defendant with a proof of its loss.

The defendant has denied liability, contending that the invoices involved herein were neither fictitious, spurious, counterfeit or forged as to the signature of any person thereon.

The parties have agreed on a stipulation of facts, as follows:

"Agreed Statement of Facts"

"The plaintiff is a national banking corporation, with its banking house in the City of Durand, Pepin County, Wisconsin.

"The defendant is a New York insurance corporation.

"That on or about the 17th day of November, 1951, the defendant issued to the plaintiff its bankers blanket bond, the original of which is attached hereto, and made a part hereof. Clause (E) of the bond is relied upon by plaintiff as the basis of this action.

"That thereafter the bank had engaged in the business of loaning money to Chain-O-Lakes, Inc., a corporation, with its principal place of business at Waupaca, Wisconsin. Chain-O-Lakes, Inc. was engaged in the business of buying and selling cheese, eggs and other merchandise. Its president and managing agent was Irving G. Koren of Waupaca, Wisconsin. There were a number of cheese factories in Wisconsin which sold their entire output to Chain-O-Lakes, Inc. Chain-O-Lakes, Inc. then in turn sold the cheese to National Tea Company, Armour & Company, Swift and Company, and a number of other nationally known dealers. The sale of the cheese and eggs to a purchasers was evidenced by the usual invoice describing the goods shipped and sent to the customer. In order to finance the business a duplicate of the invoice was taken to the Security National Bank of Durand and an assignment to the bank was stamped thereon and signed by Irving Koren for the Chain-O-Lakes, Inc. The bank then advanced 80% of the face of the invoice to the Chain-O-Lakes, Inc. When the purchaser of the merchandise paid the amount of the invoice the proceeds were paid to the Security National Bank. This gave the Chain-O-Lakes, Inc. operating funds with which to continue buying merchandise and selling merchandise to its customers. This is an accepted practice among bankers, and has the approval of the National Bank Examiners, and is encouraged by Section 241.28 of the Wisconsin Statutes.

"On or about November 10, 1954, Irving Koren of the Chain-O-Lakes, Inc. presented to the Security National Bank a number of invoices with the assignments endorsed thereon to the Security National Bank. The Security National Bank in good faith and in the course of business thereupon released the

funds to the Chain-O-Lakes, Inc. as had been the practice on previous occasions. Shortly thereafter Chain-O-Lakes, Inc. became financially involved and ceased doing business. Some of the purchasers of the merchandise upon being notified by the bank to pay their indebtedness to the bank, denied having received or ordered any such merchandise. Upon investigation it was found that these invoices which had been assigned to the Security National Bank in fact did not represent merchandise sold, as no shipments of cheese or eggs had been made and no original invoices had been sent to the alleged consignees. The invoices purported to represent shipments of merchandise and obligations of the purchasers, but in fact did not represent any shipments or indebtedness. The only signature on the assignments is that of Irving Koren and the only documents signed by him are the assignments on the invoices attached hereto. It is his genuine signature and the only one involved in the transaction. Irving Koren admits that he made out these invoices without having any orders and without making any shipments. He committed these acts and made these representations for the purpose of defrauding the bank out of the money loaned in reliance on such conduct. These invoices aggregate $21,476.29. The amount loaned by the plaintiff thereon was the sum of $17,341.52. The limit of the defendant's liability on the blanket bond under clause (E) is $10,000.00. The invoices and assignments are attached hereto and made a part hereof.

"Stafford, Pfiffner & Stafford
"Attorneys for Plaintiff
"Ramsdell, King & Carroll
"Attorneys for Defendant"

While there is some conflict of authority as to what constitutes forgery under the provisions of a bond similar to the one involved herein, the term is clearly defined by the Court of Appeals for the Seventh Circuit in Quick Service Box Co. v. St. Paul Mercury Indemnity Co., 7 Cir., 95 F.2d 15, 16, and this Court will be guided by that opinion. In that case the Court held that a blanket forgery bond, having been prepared by the indemnity company, should be construed in favor of the insured, and in defining forgery, the Court said:

"We understand forgery to include the making or altering, with intent to defraud, of any writing or printing so as to cause the alteration or execution purport to be the valid act of a person, which it is not. Within its terms are the fraudulent making of words purporting to be what they are not to the prejudice of others' rights—the publication of a false document to the prejudice of others; the false making or material alteration, with intent to defraud, of any writing which, if genuine, would be of legal efficacy or the foundation of legal liability. 12 R.C.L. 139; Wharton on Criminal Law, 12th Ed., 1163; Davis v. State of Georgia, 25 Ga.App. 532, 103 S.E. 819; State v. Hearn, 115 Ohio St. 340, 154 N.E. 244. In Williams v. State, 213 Ala. 1, 104 So. 40, the court held that to constitute forgery there must be a false making; that this might be accomplished by the fraudulent application of a false signature to a true instrument or a real signature to a false instrument; and that the essence of forgery is an intent to injure or defraud at the time the action complained of is done. And this court in Re Count de Toulouse Lautrec, 7 Cir., 102 F. 878, adopted the definition of forgery.

enunciated by Bishop as the fraudulent making of a false writing which if genuine would be apparently of legal efficacy.

\*     \*     \*     \*     \*

"Then, too, though one may under certain conditions have authority to sign certain names, yet, if he sign such to a false document or to an unauthorized one, it is forgery. Such was the conclusion of the court in Ex parte Hibbs, D.C., 26 F. 421. The court commented that it must be borne in mind that forgery is not necessarily confined to the false writing of another's name. It may be committed in other ways. The essence of forgery does not so much consist in counterfeiting as in endeavoring to give appearance of truth to a mere deceit and falsity; and either to impose that upon the world as the solemn act of another which it is not or to make a man's own act appear to have been done at a time when it was not performed and by force of such falsity to give it an operation which in truth and justice it ought not to have. In other words, if the deceit consists in making it appear that a man's own act was done under circumstances which would make it valid and genuine, when in fact it was false and unauthorized, the result is the same. People v. Dickie, 62 Hun 400, 17 N.Y.S. 51; State v. Kroeger, 47 Mo. 552, 561; State v. Sotak, 100 W.Va. 652, 131 S.E. 706, 708, 46 A.L.R. 1523; Commonwealth v. Wilson, 89 Ky. 157, 12 S.W. 264, 25 Am.St.Rep. 528. In State v. Sotak, supra, the court commented that 'there is an abundance of authority that an agent may commit forgery by making or signing an instrument in disobedience of his instructions or in the improper exercise of his authority.'" Quick Service Box Co., Inc., v. St. Paul Mercury Indemnity Co. of St. Paul, 7 Cir., 95 F.2d 15, 16, 17.

In that case the Court held that to constitute forgery there must be a false making, which may be accomplished by the fraudulent application of a false signature to a true instrument, or a real signature to a false instrument; that the essence of forgery is an intent to injure or defraud at the time the action complained of is done. That forgery is the fraudulent making of a false writing which if genuine would be apparently of legal efficacy.

Plaintiff had for a long time prior to the transactions involved herein, loaned money to "Chain-O-Lakes, Inc." on assigned receivables, all of which were executed in a manner similar to the ones referred to herein, and all of which were signed by Irving G. Koren, president. The plaintiff acting in good faith had no reason to believe the said invoices and assignments were fraudulent or unauthorized. The signature of Irving G. Koren was genuine. The invoices were fraudulently prepared by him as the purported invoices and signature of the company, and contain all the elements of forgery; (1) false making; (2) fraudulent intent; (3) instrument capable of effecting a fraud.

A writing over a genuine signature made with intent to defraud constitutes forgery. The falsity in the invoices consisted of the absence of any shipment of merchandise. Plaintiff made the loans in the regular course of business as described herein. The invoices and assignments so presented were in fact unauthorized, false and fraudulent, and were published and delivered to the Bank in bad faith, for the purpose of defrauding plaintiff of the sum of $17,341.52. They were forged within the meaning of the provisions of the Blanket Indemnifying Bond, and the plaintiff is entitled to judgment against the defendant for the limits of the policy in the sum of $10,000, with costs.

Let judgment be entered accordingly.